## Gaul *versus* Willis.

In a suit by the holder of a negotiable note who purchased it at a greater rate of discount than six per cent. per annum, against the maker, it is no defence to any part of the amount of the note, to show, that it was made for the accommodation of another, who endorsed and sold it to a person from whom the plaintiff purchased it, at a discount of one and one-half per cent. per month.

A party may lawfully purchase any security, at a greater discount than six per cent., if it be a fair purchase, and not resorted to as a contrivance to evade the statute against usury.

ERROR to the District Court of *Philadelphia.*

This was an action on a promissory note, by Benjamin B. Willis against Frederick Gaul, the maker. William C. Rudman, on behalf of the defendant, filed an affidavit of defence, as follows: "This deponent being anxious to borrow money, requested Frederick Gaul, the drawer, to lend him a note of $2000, now sued upon in this case, which he consented to do, and did without any consideration whatever, and solely for the accommodation of the deponent; that the said note so loaned by the said Frederick Gaul, was placed by the deponent in the hands of his broker, who, as deponent's agent, and for deponent's use, on or about the day of the date thereof, negotiated it for the sum of $1820 and no more, being at the usurious rate of one and a half per cent. per month on the face of the note, which sum his said broker paid over to deponent, deducting his commissions, and the same was used by this deponent, and this deponent believes and expects to be able to prove on the trial of this cause that the plaintiff obtained the said note at the said usurious rate at or about the date thereof." And also, a supplemental affidavit as follows: " That the promissory note sued upon was discounted for the said William C. Rudman by Messrs. Drexel & Co., and by them passed to the plaintiff at the time and rate specified in the original affidavit of defence in this case, as this affirmant is informed and truly believes and expects to be able to prove on the trial of this cause."

The court rendered a judgment for the plaintiff, and the prothonotary liquidated the amount due at $2022.60½.

[Gaul *v.* Willis.]

It was assigned for error that the court erred in entering judgment for the plaintiff below.

*Wm. L. Hirst*, for plaintiff in error.—The plaintiff in error contends that he is only bound to pay the amount advanced on the note, and that the court will not confirm a judgment entered for the excessive or usurious interest demanded of him.

It is not supposed that the defendant in error denies the general proposition that the first discounter could not recover the usurious excess, but it may be urged that as he passed the note to the plaintiff below before its maturity, the doctrine does not apply.

This would be so, if the party now suing for the note had paid full value for it, but as he paid no more than the first discounter, he stands on no better ground.

*Charles E. Lex*, for defendant in error.—The affidavit and supplemental affidavit show clearly that the note was purchased in the market by Mr. Willis, the present holder; nor is there an allegation that he discounted it for the parties on the note, or ever heard of them. The supplemental affidavit expressly says: "*the note was discounted for William C. Rudman by Drexel & Co., and by them passed to the plaintiff.*" If there is a complaint of usury, therefore, it cannot be against the present holder, who obtained it by a fair purchase from the parties who originally discounted it. The doctrine always has been, that a note can be fairly purchased in the market at a more than legal rate of interest without incurring the dangers of usury. This point is ruled in Musgrove *v.* Gibbs, 1 *Dall.* 216, and in Wycoff *v.* Loughead, 2 *Dall.* 92. The present holder is therefore in a better situation than Drexel & Co., and is entitled to the full value of the note. However Drexel & Co. might be liable to an abatement for usurious interest, they having passed away the note, that liability cannot attach to Mr. Willis, to whom they passed the note as an independent transaction after they had discounted it for Messrs. Rudman and Gaul.

The opinion of the court was delivered by

LEWIS, C. J.—Frederick Gaul, the defendant below, loaned his note to William C. Rudman, for the purpose of enabling the latter to raise money by the sale of it. The note was drawn in the usual form of negotiable instruments, and expressed on its face to have been given for "value received," although there was in fact no debt due from Gaul to Rudman. Rudman endorsed the note, and sold it to Drexel & Co. They, in turn, disposed of it to Benjamin B. Willis, at a discount equal to 1½ per cent. per month. Neither Drexel & Co. nor Willis had any knowledge of the purpose for which the note was given. They had a right to put faith

[Gaul v. Willis.]

in the representation, on the face of the paper, that it was given for a valuable consideration. As against the parties who made that representation the note must be held to be as they represented it. This is a principle of equity applicable to all business transactions; but it is so indispensable, in the transfer of negotiable securities, that a party to such an instrument cannot be received, even after a release, to give evidence to invalidate it in the hands of a *bona fide* holder, on the ground of usury, or for any other cause touching the original consideration: Walton v. Shelly, 1 *T. R.* 300; Griffith v. Reford, 1 *Rawle* 196. This brings us to the question, Is Benjamin B. Willis a *bona fide* holder? If he participated in any contrivance to evade the statute against usury, he would not be a purchaser in good faith. But we have already seen that he had no notice whatever of the purpose for which the note was made. He neither loaned nor intended to loan money to Rudman or to Gaul. He had no transaction of any kind with them, or with either of them. His dealings were with Drexel & Co. There was no intention on the part of the latter to borrow, and no engagement to return the money received, or any part of it, or to pay any sum whatever for the use of it. Nor was there any intention on the part of Willis to lend money to them. It was a clear purchase of the security, and nothing else. Had he a right to purchase it at a greater discount than six per cent.? That he had was fully settled so long ago as 1785: Wycoff v. Loughead, 2 *Dallas* 92; Musgrove v. Gibbs, 1 *Dallas* 216. Although the period of credit given on the instrument is usually spoken of in fixing upon the discount, it is not the only element that enters into the calculation. The value of the security is determined by the present responsibility of the parties bound for it, the probabilities of their continued ability to pay, and their character for punctuality in meeting their engagements. As the parties to the sale of the security were competent to manage their own affairs, their agreement fixing the value of the note, when fairly made, is as binding as any other contract. It is true that if the note was absolutely void there might be an insuperable obstacle to a recovery on it, however fairly acquired. But in this particular the English statutes against usury differ from our own. The former declared that all securities made in violation of them were "utterly void:" 13 Eliz. cap. 8; 3 Hen. 7, c. 5; 13 Geo. 3, c. 63. The latter contains no such provision. The result was that the English courts were bound to declare that all such securities were absolutely void even in the hands of innocent purchasers. But in this state the law has always been that even between the original parties such securities are valid for the real debt and legal interest. The excess cannot be recovered by one who participated in the contrivance to evade the statute, because he has no right to recover at law what the law prohibits him from contracting for or

receiving.   But as an innocent purchaser of such a security vio-
lates no law, he is of course entitled to recover the amount which,
on the face of the instrument, appears to be due.   The District
Court was therefore correct in giving judgment for the plaintiff.

Judgment affirmed.