## Earnest, administrator, *versus* Hoskins.

100   551
170   423

1. The assignee of a mortgage, who does not inquire of the mortgagor whether he has any defence, takes subject to the equities of the mortgagor against the mortgagee.

2. Confession of judgment on a mortgage in open court by the mortgagor in favor of the mortgagee, prior to an assignment of said mortgage, does not relieve the assignee of the necessity for such inquiry of the mortgagor, and the latter is not thereby estopped, if the judgment is subsequently opened by the court, from setting up against the assignee any defence he may have had against the mortgagee.

3. Upon the trial of a feigned issue in such case, after the opening of the judgment to determine the amount due thereon, the confession of the judgment may be given in evidence as an admission of the amount due, which may be overcome by other evidence, but it is not an estoppel.

4. After the assignment of a mortgage on which judgment had been confessed, the mortgagor assigned to the assignee a policy of insurance on the mortgaged premises, with a power of attorney authorizing him to collect the insurance money in case of loss, and apply the same toward the payment of the said mortgage and judgment, reciting the amount thereof. *Held*, that such assignment of the policy did not estop the mortgagor from subsequently setting up a defence to the mortgage, upon the opening of the judgment and the trial of a feigned issue.

5. Where a lender of money exacts as a condition of the loan that the borrower shall purchase of him a piece of land at an exorbitant price, the transaction is usurious.

6. Where the court opens several confessed judgments between the same parties, in which there may be different defences, a separate issue should be framed in each case.

April 18th 1882.    Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

ERROR to the Court of Common Pleas of *Montgomery county :* Of July Term 1881, No. 55.

Feigned issue, directed by the court upon the opening of three several confessed judgments, to determine the questions :

"1. How much money was usuriously paid on the loans secured by said judgments?

"2. How much of the said judgments has been paid by actual payments?

"3. Whether the said judgments are valid or void in law."

The said judgments were as follows :

1. J. M. Albertson, assignee of Lydia McPherson, et al. *v.* Charles Earnest and Isabella, his wife.   Sci. fa. sur mortgage. Judgment confessed in open court December 19th 1876, for $4,886.66.

2. J. M. Albertson *v.* Same. Sci. fa. sur mortgage. Judgment confessed, by agreement filed January 15th 1878 for $3300.

3. Same *v.* Same. Sci. fa. sur mortgage. Judgment confessed by agreement filed January 15th 1878 for $9,000.

The mortgaged premises in each case were the separate property of Mrs. Earnest.

This agreement of January 15th 1878, it appeared was intended to be a general settlement between the parties, and there was some evidence that the confessions of judgment included a balance of indebtedness due by Charles Earnest outside the amounts due on the mortgages.

On May 21st 1878 William G. Hoskins purchased from Albertson the said three judgments, which, together with the mortgages on which the suits had been brought, were assigned to him, in consideration of $17,186.66 in cash.

Hoskins made no inquiry of the mortgagors whether they had any defence. In January 1879, interest being in arrear, Mrs. Earnest, at Albertson's request, assigned to Hoskins a policy of insurance for $10,000 on the mortgaged premises, and at the same time she, with her husband, executed a power of attorney authorizing Hoskins as her attorney to collect the insurance money in case of loss and appropriate the same "for and toward payment and satisfaction of several mortgages and judgments obtained thereon, amounting together to a sum a little over $17,000, as by assignments thereof in the recorder's and prothonotary's offices to said Hoskins will appear; the overplus, if any, after payment of said mortgage debt, interest and costs, to be paid by my said attorney over to me." It was claimed by plaintiff that this paper was equivalent to a declaration of no set-off.

Mrs. Earnest died in June 1879.

Hoskins issued executions on the judgments in September 1879, whereupon, on petition of Charles Earnest, administrator of Mrs. Earnest, the court opened the said judgments and directed that an issue be framed as above set forth, wherein Hoskins, assignee, etc., was plaintiff and the administrator of Isabella Earnest was defendant.

The evidence on the trial, before Ross, P. J., showed that Charles Earnest became indebted to J. M. Albertson, and to secure the same procured his wife, Isabella, to execute several mortgages of her separate real estate, including the three in suit, viz., (1) dated April 8th 1868 for $4000, (2) dated June 26th 1872, for $8000, (3) dated May 9th 1873, for $9,000. During the time that Earnest remained indebted to Albertson, they had numerous and complicated financial transactions, among others the following:

On February 20th 1869 Albertson loaned Earnest $12,500 in cash, and conveyed to him one-eighth interest in certain timber lands known as the "Astola Tract" for the consideration of $8,000. It was alleged on the part of the defendant that this was an exorbitant price for said one-eighth interest and that, the purchase at that price being made a condition of the loan, the transaction was usurious, to the extent of the difference between the value of the land and the purchase money. Earnest at the same time assigned to Albertson as collateral certain securities held by him known as the "Breitenbach securities," aggregating about $13,500, and also certain other securities. There was some evidence that Albertson afterward purchased the "Breitenbach securities" absolutely.

The accounts put in evidence tended to show that Albertson had charged usury in the discounting and renewal of Earnest's notes.

The plaintiff presented, inter alia, the following point: (1) That as the evidence conclusively shows that William G. Hoskins was a bonâ fide purchaser for value of the three mortgages, without knowledge or notice of any defence against the mortgages, and that judgments were confessed by Earnest and wife upon sci. fas. issued on said mortgages, the defendants are estopped from setting up any defence against William G. Hoskins which existed before the confessions of judgment.

Answer.—This is true. (Fifteenth assignment of error.)

The defendants presented, inter alia, the following points:

7. That the assignee of a mortgage stands in the shoes of the assignor, and any legal defence which exists between the original parties follows it in the hands of the assignee.

Answer.—I decline to affirm this point under the special facts in this case; it is true as a general proposition, but is not true where the assignee is a bonâ fide purchaser for value without notice. (Twentieth assignment of error.)

10. That if the jury believed that J. M. Albertson received out of the Breitenbach securities any money over and above the amount due himself on the interest thereon, then such overplus money must be credited on account of the mortgage in suit, even as against a bonâ fide assignee.

Answer.—I decline to affirm this point, if Hoskins was a bonâ fide assignee for value without notice, after confession of judgment by the mortgagors. (Twenty-first assignment of error.)

11. If the jury believe that any moneys not originally embraced in the consideration of the $9,000 mortgage were included in the confession of judgment thereon, then the including of the same constituted the execution of a new mortgage upon a marrried woman's real estate, and not being executed in con-

formity with the laws, there can be no recovery for such moneys.

Answer.—I decline to affirm this point under the special circumstances of this case, Hoskins being a bonâ fide purchaser for value, without notice, after the rendition of the judgments. (Twenty-second assignment of error.)

12. If the jury believe, from all the testimony in the case, that the mortgage dated June 25th 1872, was given as collateral security for the payment of certain notes then and there held by J. M. Albertson against the said Charles Earnest, and that the said notes were afterward paid, whether by actual payment on principal or by usury payments of interest, by the said Charles Earnest, then the said mortgage was extinguished and the lands of Isabella L. Earnest discharged.

Answer.—I decline to affirm this point under the special circumstances of this case, Hoskins being a bonâ fide assignee for value without notice, after confession of judgment by the mortgagors. (Twenty-third assignment of error.)

The court charged the jury, inter alia, as follows:

"When once acknowledged, and of record, then even although a deed be made and obtained by fraud by me, fraud so complete and so perfect that the whole transaction is utterly rotten and in the hands of the very man who is the grantee, and he perpetrated that fraud upon me, and he sells it to a third person, who is a bonâ fide purchaser for value, without any notice of the fraud, he is saved by the recording acts and such bonâ fide purchaser is protected. Now, then, gentlemen, this is one of the grand principles which must regulate this case. It is that where the assignee, the purchaser of a mortgage, acting in good faith, purchases for value, he is protected against all fraud, all duress, all usury, everything which would have avoided the instrument in the hands of the party who had been guilty of such fraud, duress, conspiracy, or usury, and protected thoroughly and completely." (Sixth assignment of error.)

"The assignee of a mortgage is within the protection of the recording acts. Therefore, Mr. Hoskins, for all matters antecedent to the date of the execution and delivery of the original mortgages upon which the judgments are based is protected by the recording acts. There can be no question or doubt about that." (Seventh assignment of error.)

"I charge you distinctly, gentlemen, that these judgments, even though confessed by a married woman, through her attorney, are equivalent to a declaration of ' no set-off,' that they are, in my judgment, a higher grade of expressing a declaration of of ' no set-off,' because they are of record, and if a man can suffer when he is a bonâ fide purchaser for value by relying on the record of the court, then there is no safety, and our offices

might as well be abolished and everything lie in parol. It may be hard. It may not only be hard, but it may be terrible in its consequences, and in particular cases it has worked and will work to the end of time injustice and wrong ; but the law, gentlemen, is not framed for particular cases, and where the court of last resort err too often is, knowing that they have the last say, they attempt to administer equities in special cases, and destroy thereby exact and accurate principles and settled practices." (Eighth assignment of error.)

" That in this case of Lennig's Appeal, 8 W. N. C. 263, even where there had been a judgment confessed by A. to B. and usurious interest, it was held that that judgment was conclusive upon that point. Therefore, I charge you, gentlemen, that all usury which can be found that was paid before the rendition of these judgments will not avail the defendant here as against Mr. Hoskins." (Ninth assignment of error.)

" A great deal has been said here about the Astola land. I cannot see how that can be construed into usury, because there does not appear to my mind, if there be usury in it at all, any which is applicable to this case. As between Mr. Albertson and the defendant, it might be very different, but it was a collateral bargain, so far as the record shows. There was a sale made and a mortgage given for that purchase money, and that wound up that transaction, and, therefore, it would be no usury as against Mr. Hoskins." (Tenth assignment of error.)

" Then you will recollect that in buying in securities a man has the right to purchase them, at one one-hundredth part of their full value, if another person chooses to sell ; there is no usury in that, no matter how silly a bargain a man makes, if he makes it, and it has a consideration, whether adequate or not, if it has a consideration, he has a right to make that bargain, and he must stand by it afterward. There is no usury, therefore, I say to you distinctly, in the Astola transaction, which can be availed of here, and there is no usury, and it must not be taken into account by the jury, that securities here were either bought or sold above or below the market price." (Eleventh assignment of error.)

" The assignment of the policy of insurance is executed in due form, separately acknowledged, and is in that form by which a woman must indeed execute a paper of this character. It is not recorded, but this is a declaration made to Mr. Hoskins, and therefore communicated to him, and, as between her and himself, constitutes or assists to constitute an equitable estoppel." (Thirteenth assignment of error.)

The verdict and judgment, as recorded, were as follows :—

The jury, coming into court, do return the following verdict :—That the plaintiff, William G. Hoskins, is en-

titled to recover the principal and interest of the judgments sur scire facias which were entered in favor of J. Morton Albertson against Isabella L. Earnest, dated January 15th 1878, and the jurors further say that there was paid as usury prior to the confession of said judgments, as nearly as they can ascertain, $4,217.90, and the jurors further say that they have found no evidence of any money having been paid upon the judgments aforesaid, and they therefore find in favor of the said plaintiff, William G. Hoskins, in the several issues of fact directed by the court.

And now, to wit, May 23d 1881, the issue tried in the above case having resulted in favor of the plaintiff, the court do now dismiss the petition to open the judgment in this case, and all proceedings had thereunder.          BY THE COURT.

The defendants thereupon took this writ of error, assigning for error, inter alia, the answers to points and the portions of the charge above quoted.

*Henry Freedley*, *B. E. Chain* and *H. W. Brunner*, for the plaintiffs in error.

*Edward J. Fox* and *Chas. Hunsicker*, for the defendants in error, moved to quash the writ on the ground that a writ of error does not lie to the action of the court below dismissing the petition to open the judgments.

Mr. Justice TRUNKEY delivered the opinion of the court, October 2d 1882.

Charles Earnest and wife executed a mortgage to Lydia McPherson, who assigned it to J. M. Albertson on the 10th of September 1875. Albertson issued a scire facias thereon and, December 19th 1876, obtained judgment by confession for $4,886.66.

Earnest and wife executed two mortgages to Albertson ; one dated June 26th 1872, for $8000 ; the other, May 9th 1873, for $9,000. Upon each of these he issued scire facias dated November 20th 1875, and in thirty days thereafter discontinued both suits. On January 15th 1878 an agreement was filed in each case, that the discontinuance be struck off, and judgment be entered in favor of the plaintiff, in one case for $3,300, and in the other for $9,000. For consideration of $17,186.66, receipted by Hoskins on a debt due him, Albertson assigned all the mortgages to Hoskins on the 21st May 1878, and the judgments were marked to his use.

Each of these judgments was opened by the court and an issue directed to determine: "1. How much money was usuriously paid on the loans secured by said judgments ? and, 2. How much of said judgments has been paid by actual

payments, in part or in whole?" In the next trial perhaps it will not be overlooked that there are three causes; that in one the correctness of the judgment itself is unassailed, but that the defendants claim it was paid before its assignment to Hoskins; and that in the other two, the defendants allege the mortgages were paid before the entry of the judgments. Strictly, in the first the real issue is, whether the judgment was wholly or partly paid prior to its assignment; and in the others, whether at the time judgments were confessed, anything was due to the plaintiff, which was secured by the mortgages, and if so, how much. Each issue should be distinct, and to avoid confusion, it would be well before another trial to put it in proper form. As the case comes it is difficult to tell whether judgment was entered in each cause upon the verdict. The three were tried together; there is one writ of error which the parties appear to treat as to one case, the others to abide the result. The motion to quash is on the ground that no writ of error lies to the action of the court dismissing the petition to open a judgment. These judgments were opened before the trial. It is very clear that the court did right in opening them and that a trial should be had on the merits. Under the rulings, the jury found for the plaintiff and, in fact, judgment was entered upon the verdict. This is not a case which should be quashed because of formal errors in the issues and record; these are amendable, and we will consider the assignments of error.

At the outset the court charged that the assignee of a mortgage is within the protection of the recording acts; that the evidence shows that Hoskins was a bonâ fide purchaser for the value of the mortgages, without notice of any defence, and is protected against all fraud, usury and everything which existed at the dates of the assignments, and which would have avoided the mortgages in the hands of the mortagagee; and that the defendants are estopped from setting up any defence against Hoskins which existed before the confessions of judgment. This ruling is entirely novel. It is in the teeth of the decisions. The mortgagee is a lien creditor, a holder of a security for money. He has some advantages over judgment creditors, by virtue of the recording acts, but the mortgagor may avail any legal or equitable defence against the debt. The assignee takes subject to all defences, unless he inquire of the mortgagor and is told that there are none: Michener v. Cavender, 38 Pa. St. 336. "That the assignee of the mortgage, unless the mortgagor had estopped himself from taking the defence, held it subject to all the equities with which it was affected in the hands of the assignor, is a principle too familiar and well settled to need the citation of decisions to sustain it:" Ashton's Appeal, 73 Pa. St. 153. Where, at the time of purchase, the assignee of

a mortgage has knowledge that usury is included therein, the
device of a certificate of no defence, will not protect him
against defence to the extent of the usury: Duquesne Bank's
Appeal, 74 Pa. St. 426.

There is no difference in legal effect between a judgment
confessed, and judgment on the verdict of a jury. But the court
will open one of the former kind and let the defendant into a
defence, in a proper case: Hopkins *v.* West, 83 Pa. St. 109. The
power of the courts to open judgments entered by confession,
or in default of an appearance or plea, is not denied; and it is
the duty of the courts to exercise such power wherever it is
satisfactorily shown that in equity the judgment ought not to
be collected. An assignee of a judgment has no rights superior
to the plaintiff, except where he was induced to purchase by the
defendant. A judgment confessed is conclusive against the
defendant till opened, or set aside; if opened, the confession
may be given in evidence as an admission of the amount due;
but it is not an estoppel. As testimony, it may have much or
little weight, which will be determined by its connection with
other evidence. An estoppel is an admission of such a nature
that the party whom it affects is not permitted to aver against
it, or offer proof to overcome it. He cannot controvert an
estoppel by admission. It is as conclusive against him as an
estoppel by record. A judgment cannot be impeached col-
laterally, save for fraud in the obtaining of it. A stranger cannot
avoid it for usury or other illegal thing contained therein, unless
it was given to defraud him. Nor can the defendant, even in
the distribution of a fund raised by sale of his property. It
estops the defendant and others from proving that it was
rendered for more money than was owing to the plaintiff. But
if it was rendered by confession, the defendant may move that
it be opened, and if it be opened, the confession will not estop
him from showing any good defence against the plaintiff's
claim. The confession will be treated as a mere admission. It
was not given to induce a third person to purchase, and the
assignee has no better footing than the plaintiff had. Such
admission is not akin to the answer of the defendant in the
judgment to the inquiry of one about to purchase, that he has
no defence. A stranger, who inquires and acts upon the faith
of such answer shall not be injured by the defendant subsequently
setting up a defence, for the defendant induced the act.
Whether he spoke truly or not, if the purchaser believed him,
he is estopped from averring or proving a defence, which would
injure the purchaser. Precisely of the same nature is a certificate
of no defence given by a mortgagor; it is for the purpose of
inducing any person to whom it is presented to buy the mort-
gage. It is a statement to the assignee at and before the time

of his purchase. But a confession of judgment upon a mort-
gage is a contract between the parties to the mortgage; there is
no priority in that contract between the defendant and a third
person, and the assignee of the mortgage and judgment takes
subject to all equities with which they were affected in the
hands of the assignor.

The learned judge of the common pleas cited Lennig's
Appeal, 93 Pa. St. 301, as authority for his ruling that all usury
which can be found that was paid before the rendition of these
judgments, will not avail the defendants as a defence against
Hoskins. That was a case of the distribution of the proceeds of
sale of the mortgaged property. The sole question was, whether
a second mortgage creditor, where there had been no fraud,
could defeat distribution to so much of the judgment
on the first mortgage as might have been prevented
had the mortgagor set up a defence of usury; and it was held
that he could not. Before the auditor, for purpose of distribu-
tion, the judgment was conclusive. It is difficult to conceive
that anything in that case has the slightest bearing on the ques-
tion, whether a mortgagor can set up the defence of usury when
the judgment was opened, at his instance, for the express pur
pose of permitting him to make that defence.

The sixth, seventh, eighth, ninth, fifteenth and twentieth
assignments are sustained. And the instruction complained of
in the thirteenth assignment was error. Some months after
Hoskins bought the mortgages, Mrs. Earnest was induced to
assign to him a policy of insurance, and to give him a power
of attorney to collect the insurance money in case of loss, and
appropriate the money toward payment of the mortgages and
judgments. This was additional security, not an estoppel. It
evidences that she then thought she was liable to pay the money
claimed.

The borrower is not bound to pay any interest in excess of
six per centum per annum, though he may have contracted to
pay a greater rate. Any security given in payment or discharge
of an usurious contract is equally void with that. The original
taint attaches to all consecutive obligations, growing out of the
original usurious transaction, and none of the descendent obliga-
tions can be free from it if the descent be traced. This principle
was settled under statutes which totally avoided the contract.
Under the Act of 1858, the money loaned with lawful interest is a
valid debt, and only the excess of interest can be avoided, but
that affects only the extent of the application of the principle:
Campbell v. Sloan, 62 Pa. St. 481; Overholt v. The Bank, 82
Pa. St. 490. It is immaterial in what form or pretense the
usurious interest is covered in the contract. When a party is
compelled to take goods at more than the market price in order

to obtain a loan, the transaction is usurious. No contract, however framed, is good if the ultimate effect would be to secure more than the legal rate of interest. Where one man purchased land from another, at an exorbitant price, for the purpose of obtaining a loan, the seller making the loan to induce the purchase, the transaction was usurious, and, under the Act of 1858, the difference between the value of the land and what it was sold for, may be deducted from the debt: Fitzsimons *v.* Baum, 44 Pa. St. 32. The inquiry is not merely whether lands, goods or securities were sold for more than their market value, but whether the property was sold, and bought above its market price, as part of the bargain for the loan of money. That part of the charge which constitutes the tenth and eleventh assignments, is error.

In each of the last two cases the plaintiff is entitled to judgment for the amount, if any, remaining, unpaid on the debt secured by the mortgage, and no more. Moneys and debts, not so secured, were included in the confessions. Mrs. Earnest was not bound thereby. Neither she nor the attorney for her could make a conclusive contract to embrace outside indebtedness as if it were secured by the mortgage. She had right to demand that the same be thrown out, and the twelfth and twenty-second assignments are well taken.

The defendants requested the court to charge that, "If the jury believe from all the testimony in the case that the mortgage dated June 25th 1872, was given for collateral security for the payment of certain notes there and then held by J. M. Albertson against the said Charles Earnest, and that the said notes were afterward paid, whether by actual payment on principal or by usury payments of interest, by the said Charles Earnest, then the said mortgage was extinguished and the land of Isabella L. Earnest discharged." This point ought to have been affirmed, and doubtless would have been had not the learned judge started out by ruling that a bonâ fide assignee for value, after confession of judgment by the mortgagor, is protected, although the debt was actually paid prior to the confession. He based the refusal upon that ruling.

The defendants' tenth point was, "That if the jury believe that J. M. Albertson received out of the Breitenbach securities any money over and above the amount due himself on his interest therein, then such overplus money must be credited on account of the mortgages in suit, even as against a bonâ fide assignee." Had this point been simply refused the defendants could not complain. The testimony respecting the Breitenbach securities was conflicting ; one party testifying that he assigned them as collateral security, and afterwards sold an interest in them to Albertson ; the other, that he purchased the whole for a specified sum. Here was a question for the jury, but the point assumed

[Ormerod v. Dearman.]

that only an interest was sold and deducting that, the balance belonged to Earnest. The answer was misleading, for if the jury found the fact as assumed, the court ruled that Hoskins was entitled to the money; and the twenty-first assignment is sustained.

After testimony had been received tending to establish that the mortgage of June 26th 1872, was executed to secure the payment of the renewed notes and as a substitute for a prior mortgage, the defendants offered to prove that Earnest communicated this fact to his wife. It ought to have been received, for it was proper to show that Mrs. Earnest knew, at the time, of the agreement of Albertson and Charles Earnest respecting the purpose of the mortgage.

No point raised by the specifications of error, not already noted, requires remark. Even if it was error to receive the confessions of judgment at the time they were offered the error was harmless, for at a later stage in the trial they were admissible.

Judgment reversed, and venire facias de novo awarded.