## Hartranft, assignee, *versus* Uhlinger.

1. The payment of usury, under whatever form it may be concealed, will not be enforced, if it can by any means be discovered.

2. A contract to sell mill machinery for the sum of $10,000, and until the same was paid the purchaser to pay five cents per barrel on the output of the mill, the minimum amount thus to be paid each year being fixed at $1,500, is a clumsy device to evade the statute against usury.

January 25th, 1887. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, and GREEN, JJ., CLARK J. absent.

ERROR to the Court of Common Pleas, No. 1, of *Philadelphia county :* Of January Term, 1887, No. 60.

This was a *scire facias sur* mortgage brought by William P. Uhlinger against Samuel Hartranft who, after the bringing of this suit, made an assignment for the benefit of his creditors to Frank A. Hartranft. The mortgage was dated November 20th 1884, and was given to secure the payment of $10,000 in five years with interest payable half yearly, with a proviso that the whole should become due and payable in default of payment of any instalment of interest for thirty days. The plaintiff alleged that there had been a default in the payment of interest for more than thirty days, and that therefore the whole sum with interest was due.

The defendant filed the following affidavit of defence.

Samuel Hartranft, being duly sworn according to law, says, that he is the defendant in the above-stated case, and that, as advised by counsel, he has a valid defence to the plaintiff's claim in the above stated *scire facias sur* mortgage of the following nature and character, viz.:

That the mortgage sued on was given by this defendant to secure the payment of the sum of ten thousand dollars, for certain new machinery for manufacturing flour, and certain alterations to the defendant's flouring mill on Ninth street, below Girard Avenue, in the city of Philadelphia, furnished and done by the firm of Griscom & Co., & McFeely, under a written agreement between them and this defendant at and for said sum of ten thousand dollars, to be paid by this defendant at any time within five years from the completion of

their contract under said agreement, (which was about the date of said mortgage), and that until said sum of ten thousand dollars was paid, the defendant by said agreement was to pay five cents a barrel of flour, or its equivalent in weight, for the entire production of the mill, and not less than for an average output of one hundred barrels per day for three hundred days in each year, whether such output was actually made or not; and by a subsequent agreement it was agreed that the interest on the mortgage should be deducted from the five cents per barrel at the end of each month, the remaining portion of the five cents per barrel of output to be paid monthly within fifteen days after the expiration of each month, and the interest on the mortgage at six per cent. to be paid as provided for in said mortgage. That at about the twentieth day of November, 1884, Griscom & Co., and McFeely assigned their said contract to the plaintiff, and the mortgage in suit was executed to plaintiff. That it was also provided in said assignment that the payment of five cents on each barrel of flour manufactured in defendant's mill should commence on the first day of December, A. D. 1884. That this defendant is advised by counsel, and so believes and sets out, that said contract was usurious, and that no more can be collected on said contract or said mortgage than the said sum of ten thousand dollars and interest thereon from December 1, 1884.

That this defendant has paid at different times on account of said debt of ten thousand dollars, altogether the sum of eighteen hundred and fifty-two dollars and twenty cents, the major portion of it in cash, and a small part only in merchandise. That upon the defendant's defence of usury, there was not any interest due at the time this suit was brought; that upon the 20th of May, 1886, when six months interest became due, the whole interest on said mortgage from its date would amount to but nine hundred dollars, and defendant has paid, as above stated, before the institution of this suit, eighteen hundred and fifty-two dollars and twenty cents.

The agreements referred to were made a part of the affidavit and filed in the case. The facts contained in them are however substantially set forth in the affidavit of defence. On motion of the plaintiff a rule was granted to show cause why judgment should not be entered on the mortgage for want of a sufficient affidavit of defence, which, after argument, was made absolute, and damages were assessed at $10,790.

The defnedant thereupon took this writ and assigned for error the action of the court in making said rule absolute, and entering judgment on said mortgage.

*Joseph W. Hunsicker* for plaintiff in error.—In construing

.the statutes against usury, it has always been the custom to hold, both in this country and England, that no contract, however framed, would hold good if the ultimate effect of it would be to secure more than the legal rate of interest: Fitzsimmons *v.* Baum, 8 Wr., 32; Bosler *v.* Rhiem, 22 P. F. S., 54. Earnest *v.* Hoskins, 4 Out; 551; Evans *v.* Negley, 13 S. & R. 218; Grubb *v.* Brooke, 11 Wr., 485; Craig *v.* Pleiss, 2 Casey, 271.

*A. H. Winterstien* and *George Tucker Bispham* for defendants in error.—Mr. Justice GRIER, of the Supreme court of the United States, defined usury at common law thus: "To constitute usury there must either be a loan upon usurious interest, or the taking of more than a legal interest for the forbearance of a debt or sum of money due." Hogg *v.* Ruffner, 1 Black, 115. Thus, as said by the court in this case, if A. propose to sell to B. a tract of land for $10,000 in cash or for $20,000 payable in ten annual instalments, and if B. prefers to pay the larger sum to gain time, the contract cannot be called usurious.

This is the doctrine of all the English and American authorities: Beete *v.* Bidggood, 14 Eng. C. L., 80, and cases in Tyler on Usury: Nichols *v.* Pearson, 7 Pet., 109; Brooks *v.* Avery, 4 N. Y., 225; Cutler *v.* Wright, 22 N. Y., 472; Ketcham *v.* Barber, 4 Hill, 224; Stewart *v.* Forney, 27 Pittsb. Leg. J., 111; Fitzsimmons *v.* Baum, 8 Wr., 32, rule this case.

Mr. Justice TRUNKEY, in Earnest *v.* Hopkins, 4 Out., 560, in commenting upon Fitzsimmons *v.* Baum, lays down the only correct rule of guidance in detecting usury in transactions of buying and selling. The inquiry is not merely whether lands, goods or securities were sold for more than their market value, but whether the property was sold and bought above its market price, as part of the bargain for the loan of money." Where, as in our case, there was no market price for the machinery sold, and its price depended solely upon the bargain between the parties, and, in addition to that, there was no pretence of a contract for the loan of money, usury cannot be read into the transaction.

Mr. Justice GORDON delivered the opinion of the court February 7th, 1887.

The affidavit of defence, now before us, sets forth a clear case of usury. The mortgage of ten thousand dollars covered the price of the machinery in full; this is obvious enough from the fact, that had that amount of money been paid the next day after the completion of the contract it would have satisfied the entire claim. "It being understood and agreed, that upon the payment in cash of the said sum of ten thousand dollars at any time within the five years, the payment of five cents per bar-

rel shall cease and determine." If then these five cents per barrel were to continue to be paid as long as the principal debt remained unpaid, and no longer, and if the payment thereof was to cease *eo instante* the debt was extinguished, what was it if not a compensation for the use of the money? If this was part of the *bona fide* price of the machinery, how does it come that its payment depended upon the continuance of the principal debt and was to cease just as soon as that debt was extinguished? It is too plain for discussion that this was a device, and a clumsy one at that, to evade the statute of usury. Not nearly so ingenious as that found in Fitzsimmons *v.* Baum, 4 Pa., 32, where the borrower bought land of the lender at an exorbitant price in order to obtain the loan; or as that in Earnest *v.* Hoskins, 100 Pa., 551, concerning which Mr. Justice TRUNKEY says: "The inquiry is not merely whether lands, goods or securities were sold for more than their market value, but whether the property was sold and bought above its market price, as part of the bargain for the loan of money." So, in Evans *v.* Negley, 13 S. & R. 218, where the usury took the form of rent, it was held that nevertheless it fell under the bann of the statute. It is, indeed, wholly immaterial under what form or pretence usury is concealed, if it can by any means be discovered our courts will refuse to enforce its payment. In the case now before us, taking as true the affidavit of defence, the design is patent; the price to be paid for the machinery was ten thousand dollars; three out of the five cents per barrel were admittedly interest, and were to be so applied, and we cannot see why the remaining two cents were to be paid except as an additional compensation for the use of the money, or as a bonus for the extension of the time of payment.

The judgment is reversed and a *procedendo* awarded.