## Medical Dental Business Service of New Jersey, Inc., v. Morrison, Secretary of the Commonwealth, et al.

*Robert F. Lehman,* for petitioner.

*John H. Fertig* and *H. J. Woodward,* Deputy Attorney General, and *James H. Duff,* Attorney General, for respondents.

MAYS, J., twenty-third judicial district, specially presiding, March 13, 1944.—The Medical Dental Business Service of N. J., Inc., petitioner, seeks to compel the Secretary of the Commonwealth and the Department of State, respondents, to issue to it a certificate of authority to do business in this Commonwealth as a foreign business corporation in accordance with article X of the Business Corporation Law of May 5, 1933, P. L. 364, and has procured an alternative writ of mandamus directing respondents to show cause why a peremptory writ should not be awarded as prayed for.

The petition sets forth that petitioner is a New Jersey corporation; the character and nature of its proposed business as stated in its application for a certificate of authority to do business and as set forth in exhibit "A" attached to the petition is, inter alia, "(a) To assist all persons who may be considered a sound financial and moral risk and who may be in need of medical, surgical and dental attention and hospitali-

zation to finance the cost of said medical, surgical or dental attention and hospitalization . . .; (*b*) To assist all patients who may need medical, surgical or dental care and hospitalization to budget the cost of the same and to act in an advisory capacity for the financing of such attention; (*c*) To acquire to the same extent as natural persons and without limit as to amount, by purchase, lease, exchange, hire or otherwise, any lands, improved or unimproved, tenements, hereditaments, chattels, real or personal, or any interest therein . . .; (*d*) To advance or loan moneys on things of value and to extend credit, and other assistance to any corporation, trust, association, partnership or individual . . ."

The petition further sets forth that petitioner filed its application for a certificate of authority to do business in the Commonwealth as a foreign business corporation, in which it averred that the character and nature of its proposed business was "The purchase without recourse of commercial paper and accounts of doctors, dentists and hospitals, and the collection, adjustment and settlement of such commercial paper and accounts"; that said application was denied by the Secretary of the Commonwealth under article I, sec. 4, of the Business Corporation Law "for the reason that the purpose set forth in paragraph 5 of the application for a certificate of authority was one within the purview of the Consumer Discount Company Act of April 8, 1937, P. L. 262, and article I, sec. 2, of the Banking Code of May 15, 1933, P. L. 624."

Respondents filed a motion to quash the alternative writ, assigning the following reason: "The plaintiff's petition discloses that plaintiff desires to engage in this Commonwealth in the business of furnishing consumer credit for medical, dental, and hospital service, and that the charges therefor may be in excess of six percent (6%). Under the Consumer Discount Company Act of April 8, 1937, P. L. 262, a foreign corporation may not engage in such business in the Common-

wealth of Pennsylvania, and the defendants, therefore, cannot grant the application for a certificate of authority to the plaintiff to do business in this Commonwealth as a foreign business corporation."

## Question involved

Is the business petitioner proposes to do in this Commonwealth one which may not be engaged in by petitioner, a foreign corporation, as prohibited by section 3(a) of the Consumer Discount Company Act of April 8, 1937, P. L. 262?

## Discussion

The plan of business petitioner proposes to do in this Commonwealth according to its charter is to assist those in need of medical, surgical, and dental attention. The application for a certificate of authority amplifies this by stating that the business of the corporation is to purchase commercial paper and accounts from doctors without recourse, and then in great detail sets forth how the commercial paper shall be dealt with.

Article I, sec. 4, of the Business Corporation Law provides: "This act does not relate to, does not affect, and does not apply to: . . . (3) Any corporation which, by the laws of this Commonwealth, is subject to the supervision of the Department of Banking . . ."

Section 3(a) of the Consumer Discount Company Act of 1937 provides that "no . . . foreign business corporation . . . joint-stock company, or any other group of individuals however organized, shall engage . . . in this Commonwealth . . . in the business of negotiating or making loans or advances of money or credit, in the amount . . . of one thousand dollars . . . or less, and charge, collect, contract for or receive interest, discount . . . which aggregate in excess of six percent . . . per year . . ." Section 3(b) provides that domestic business corporations shall not engage in such business without first obtaining a license from the Secretary of Banking.

Petitioner here asks this court for a mandamus execution, claiming that the nature of the transaction or transactions here involved is that of purchase rather than discount, and therefore is not subject to the control of the State Department of Banking.

The petition and the exhibits attached thereto, briefly stated, are as follows: A doctor, dentist, or hospital having business relations with petitioner will require his or its credit patients to sign a promissory note (non-negotiable) with power to enter judgment as of any term for the amount of the professional fee, payable in monthly instalments.

The note is to be executed on a form supplied by petitioner (exhibit "F") and is payable to the doctor, dentist, or hospital, or to his or its order, at petitioner's office.

When the note has been signed by the patient, petitioner takes an assignment of—or, as petitioner puts it, purchases—the note from the payee at a discount. The endorsement or assignment, as appears from exhibit "F" attached to the petition, reads as follows: "Pay to the order of Medical Dental Business Service of N. J., Inc. without recourse." After this transfer the patient makes all promised payments directly to petitioner. When the note is transferred to petitioner, the payee receives the face of the note less discount at rates set forth in exhibit "G", which rates vary according to the face amount of the note and according to the terms of the patient's obligation, and in all cases are far in excess of six percent.

After petitioner takes the note from the payee and determines the discount, the payee receives a check for the face amount of the note less discount, the form of check used by petitioner being illustrated in exhibit "H".

The Commonwealth makes the contention that this is not an outright purchase of commercial paper but

that the operation of plaintiff company is that of a consumer discount company. The basis for the Commonwealth's contention is that plaintiff proposes a method for the supplying of services on credit to those in need of medical, dental, or hospital services for charges in excess of six percent. Patients are consumers with respect to the services performed by doctors, dentists, and hospitals.

Judge Wickersham, in Professional Service Credit Association, Inc., v. O'Hara et al., 40 D. & C. 291, 50 Dauph. 85, recognized this when he stated (p. 297):

"We are of opinion that the form of transaction here involved falls squarely with the said act [Consumer Discount Company Act], as petitioner is a foreign corporation and the business it proposes to do in this Commonwealth is tantamount to making loans or discounts in amounts of $1000 or less, at a loan or discount rate in excess of 6 percent."

Petitioner contends that, since the endorsement in the instant case is without recourse, the Professional Service Credit Association case, supra, is not controlling here. Unquestionably it was the intention of the legislature in passing this act to regulate generally the field of consumer credit in amounts up to $1,000, and there is a definite mandate in the act that this business shall not be engaged in by foreign corporations.

Should this foreign corporation because of the proposed plan be permitted to do that which the legislature intended that they should not do? We think not.

Whether the discount is paid by the consumer (patient) or by others such as the doctor, dentist, or hospital, such transactions come within the purview of the statute. This is the only way in which the main purpose of this act, which is the control of such credit, can be carried out. The substitution of some form or device which, as here, is supposed to give the semblance of a purchase in the endeavor to cover up a usurious loan will not serve petitioner's purpose.

In Rosenbusch v. Fry, 136 Atl. 711 (N. J.), the court used these significant words:

"The law, however, regards the essential nature of the transaction, not the incidents created to give it a fictitious color. The plaintiffs had, and could have, no interest in the purchase of the defendant's wages, except to obtain for the money which they gave him on August 20th a greater sum than they would be entitled to for the use of the money at the legal rate of interest."

And so here petitioner could have no interest in the purchase of the notes given by patients except to obtain for the money which it gave to the one who performed the services a greater sum than it would be entitled to for the use of the money at the legal rate of interest.

The Legislature of Pennsylvania has by the passage of this act, as already pointed out, stated who should or should not engage in the small loan business, and as to those permitted so to do it fixed the rate of interest according to certain standards of policy, having regard to the government, the population, the manners, and commerce of the time.

The courts should watch with jealousy against any attempt to evade such a statute lest persons or corporations prohibited by that act from doing business in this Commonwealth under the guise of ordinary dealings should do that which the act forbids them to do. Surely, if this were a fair sale of these notes, which unquestionably petitioner might lawfully purchase for less than the sum due upon them, and afterward receive the whole amount with interest, the legality of such a sale we could not question. But, as already pointed out, the character and circumstances of this transaction bespeak it to be a loan notwithstanding petitioner speaks of it as a sale.

We do not overlook what is the unequivocal characteristic of a loan—that the money is at all events to

be paid with interest by the borrower himself or out of his funds. There is, however, an exception to that rule and this case comes within it—that where the assignment is without recourse and, as we find, introduced merely for color and for the purpose of avoiding the statute, it is still a loan.

"A party may lawfully purchase any security, at a greater discount than six per cent., if it be a fair purchase, and not resorted to as a contrivance to evade the statute against usury": Gaul v. Willis, 26 Pa. 259 (syllabus).

A great judge observed: "Where the real truth is the loan of money the wit of man cannot find a shift to take it out of the statute."

"The courts will closely scrutinize every suspicious transaction in order to ascertain its real nature. In the determination of whether the contract is tainted with usury the court will look to the whole transaction; it will consider the surrounding circumstances, the occurrence at the time of the making of the agreement, and the instruments drawn. The court will look to and construe the transaction by its substance and effect, rather than its form, and, if, from a consideration of the whole transaction, it becomes apparent that there exists a corrupt intent to violate the usury laws, the court will permit no scheme or device, however ingenious, to hide the face of usury": 66 C. J. 174, §64.

What was said by Justice Barnes in Simpson v. Penn Discount Corp. et al., 335 Pa. 172, 175, 176, is quite significant:

"The statute against usury forms a part of the public policy of the state and cannot be evaded by any circumvention or waived by the debtor: *Moll v. Lafferty*, 302 Pa. 354, 359. It is immaterial in what form or pretence the usurious interest is covered in the contract: *Earnest v. Hoskins*, 100 Pa. 551, 559. As usury

is generally accompanied by subterfuge and circumvention of one kind or another to present the color of legality, it is the duty of the court to examine the substance of the transaction as well as its form, and the right to relief will not be denied because parol proof of the usurious character of the transaction contradicts a written instrument. In *Hartranft v. Uhlinger*, 115 Pa. 270, it is said (p. 273) : 'It is, indeed, wholly immaterial under what form or pretence usury is concealed, if it can by any means be discovered our courts will refuse to enforce its payment.' "

Finally, if it could be held that these transactions were purchases of notes, such a foreign corporation generally making a business of purchasing them and collecting the amounts due thereon would still be prohibited from doing business in this Commonwealth because of that portion of section 3 of the Consumer Discount Company Act of 1937 which prohibits such a corporation from advancing money or credit in the amount or value of $1,000 or less.

Surely what petitioner intends to do is to advance money to the payee of the note and advance credit to the maker of the note. To compel the Secretary of the Commonwealth to issue a certificate of authority would put this foreign corporation, whether it negotiates or makes loans or advances money or credit, in a more fortunate position than domestic corporations, in that a foreign corporation would be free from the control of the Department of Banking while a domestic corporation engaging in the same business would be subject to such control.

And now, to wit, March 13, 1944, it is ordered, adjudged, and decreed that the motion to quash the alternative writ of mandamus heretofore awarded is sustained, and the said writ is dissolved. Costs to be paid by petitioner.