## Simpson *v.* Penn Discount Corporation et al., Appellants.

Argued January 4, 1939. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Benjamin Sork,* of *Blumberg & Sork,* for appellants.

*Wm. T. Campbell,* of *Swartz, Campbell & Henry,* for appellee, was not heard.

OPINION BY MR. JUSTICE BARNES, April 24, 1939:

In this proceeding plaintiff seeks to compel the cancellation and return of certain judgment notes executed by him which are in the possession of defendants, and to set aside assignments which he made of an interest in his grandfather's estate as security for the notes. It is averred that the transactions in which these instruments were given involved loans at usurious interest charges in violation of the Act of May 28, 1858, P. L. 622, which prescribes the lawful rate of interest in this state.

It appears from the record that two loans were made to plaintiff by the defendant, Penn Discount Corporation, which was organized under the laws of the state of Delaware, with its office in the City of Philadelphia. Plaintiff obtained a loan of $900 on September 16, 1936, for which he signed a note in the amount of $2,100 payable to the order of the corporation, and gave as security an assignment of his interest in the estate of his grandfather, Robert F. Simpson, deceased. Thereupon he received four checks payable to his order, each dated September 16, 1936, in varying amounts, aggregating $2,100. He was required to endorse and return each check to the corporation, and actually received the sum of $900 in cash as the proceeds of the note.

The second loan was made on December 29, 1936, when plaintiff received an additional sum of $1,750. The details of this transaction were similar in all respects to the first one, except that plaintiff executed a note for $4,200, and gave a further assignment of his interest in the estate.

It is uncontradicted that for the two notes which together amounted to $6,300, the total cash received by plaintiff did not exceed the sum of $2,650. Each note provided for interest at 6% per annum upon the principal amount thereof.

The trustee of the estate of Robert F. Simpson, deceased, recognized the assignments, and pursuant thereto made payments from time to time to the Penn Discount Corporation, amounting on June 21, 1937, to $2,694.16. Prior thereto, on June 11, 1937, plaintiff made a tender to defendant of the balance of the cash advances made to him, together with interest thereon, and requested that his notes and assignments be returned. This tender was refused. After the filing of the present bill, the trustee paid in September, 1937, the further sum of $423.72, whereby the total amount repaid to defendant became $387.01 in excess of the actual loans with legal interest thereon.

The other defendant, Keystone Realty Company, is the fictitious name under which the president of the Penn Discount Corporation, B. D. Eisenberg, carried on the business of making loans upon trust funds, estates and legacies. This concern had no part in the transactions with plaintiff, although it was represented that it was necessary for the corporation to pay to the Keystone Realty Company for its services as broker, a commission of 33⅓% for each year the loans remained unpaid. However, it does not appear from the testimony that any services were performed by this defendant in connection with plaintiff's loans. This action, therefore, is primarily between plaintiff and the Penn Discount Corporation.

Upon the hearing in the court below there was no testimony produced by defendants to show that plaintiff received more than $2,650 upon the two notes, nor of services rendered to him other than the usual routine involved in the making of loans. A decree was entered in favor of plaintiff directing the defendants to refund the overpayment of $387.01 and to cancel and return the promissory notes and assignments of plaintiff in their possession. From the final decree dismissing exceptions the defendants have taken these appeals.

The principal contention of defendants here, as in the court below, is that evidence was inadmissible to

establish that the actual loans to plaintiff were less than the amounts set forth in the notes and assignments. Defendants assert that these instruments speak for themselves, and it was error to permit plaintiff to vary their terms by parol testimony in the absence of proof of fraud, accident or mistake. However, it is apparent that if the familiar rule of evidence upon which defendants rely, were here applied, it would then become impossible for the court to detect usury, and would defeat the very purpose of the statute forbidding excessive rates of interest.

Wherever the question has arisen the general principle has been approved that parol evidence is always competent to show that a written agreement lawful on its face is in fact usurious. In 22 Corpus Juris, section 1627, it is stated: "The rule which forbids the introduction of parol evidence to contradict, add to, or vary a written instrument does not extend to evidence offered to show that the contract was made in furtherance of objects forbidden by statute, by the common law, or by the general policy of the law; . . . This rule is a necessary one, for otherwise the most nefarious transactions might be protected by written instruments on the face of which no vice is apparent. In accordance with the rule parol evidence is admissible to show that, although the writing evidencing a transaction is legal upon its face, the real transaction is tainted with usury; . . ."

Therefore where a question of usury is at issue parol evidence to show the true intent of the parties and the real nature and terms of the contract is admissible. In *Chamberlain v. M'Clurg*, 8 W. & S. 31, it was held that the usurious character of a contract could be shown by parol evidence even though the parties had by written agreement stipulated the terms and conditions of the loan. The statute against usury forms a part of the public policy of the state and cannot be evaded by any circumvention or waived by the debtor: *Moll v. Lafferty,*

302 Pa. 354, 359. It is immaterial in what form or pretence the usurious interest is covered in the contract: *Earnest v. Hoskins*, 100 Pa. 551, 559. As usury is generally accompanied by subterfuge and circumvention of one kind or another to present the color of legality, it is the duty of the court to examine the substance of the transaction as well as its form, and the right to relief will not be denied because parol proof of the usurious character of the transaction contradicts a written instrument. In *Hartranft v. Uhlinger*, 115 Pa. 270, it is said (p. 273) : "It is, indeed, wholly immaterial under what form or pretence usury is concealed, if it can by any means be discovered our courts will refuse to enforce its payment."

The defendants also contend that plaintiff is not entitled to relief in equity because there is an adequate remedy provided at law. It is claimed that in accordance with the Act of 1858, supra, plaintiff should have paid the full face of the two notes with interest accrued thereon, and brought suit to recover the amount of the excess, or he should have refused to make any payments on account of the notes and interposed the defense of usury if attempt were made to enforce payment of them by suit. We find no merit in this contention. There is no doubt of the power of a court of equity to require cancellation and surrender of securities given for a usurious loan where the amount of money actually advanced has been repaid, together with legal interest thereon: *Roberts v. Penna. Loan and Tr. Co.*, 39 Pa. Superior Ct. 358. Particularly is it necessary in the present case that equitable relief be afforded plaintiff by cancellation and return of the assignments where the trustee of the estate is continuing to make payments to defendants by virtue thereof. In view of the conclusion we have reached we deem it unnecessary to discuss the remaining questions raised by defendants.

The order of the court below is affirmed, costs to be paid by appellants.