Richman *v.* Watkins, Appellant.

Argued November 13, 1953. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Morris Wolf,* with him *Wolf, Block, Schorr & Solis-Cohen,* for appellant.

*William A. Gray,* with him *Gray, Anderson, Schaffer & Rome,* for appellee.

OPINION BY MR. JUSTICE CHIDSEY, March 22, 1954:

The plaintiff, Willard I. Richman, brought this action in assumpsit against the defendant, Herman M. Watkins, under the Act of May 28, 1858, P. L. 622, to recover the sum of $12,500 claimed to have been paid as usurious interest on a loan of $125,000 made by defendant to plaintiff. The defense raised was that the money loaned was not that of the defendant but of defendant's wife, and the $12,500 was a fee for defendant's services as broker. A jury trial resulted in a verdict for the plaintiff in the amount of $13,795.83, representing the amount of plaintiff's claim with interest. Defendant filed motions for judgment non obstante veredicto and for a new trial, both of which were refused by the lower court, and this appeal is from the judgment entered on the verdict.

On March 16, 1951 defendant addressed the following letter to plaintiff:

512

"March 16, 1951

Williard [sic] I. Richman
Broadwood Hotel
Philadelphia, Penna.
Dear Williard: [sic]

This is to confirm our verbal arrangements wherein I hereby agree to obtain for you a loan in the sum of $125,000. upon the following condition.

That you will repay the said loan in twenty-five months from date of settlement by paying $5,000. a month on account plus interest at the rate of 6%. You also agree to give me a mortgage in the sum of $125,000, covering the Broadwood Hotel and all its equipment as subject to a mortgage now in existence in the sum of $500,000. reduced to approximately $468,000 and two other indebtednesses of $50,000 each, reduced to approximately $67,000. Proper evidences will be produced monthly as to the payments made to the first mortgagee for interest, principal and taxes. You are also to agree to obtain for me sufficient evidences that I am covered with the necessary hazzard [sic] fire insurance to cover the indebtedness of $125,000.

It is further more understood and agreed that I am to receive a fee in the sum of $12,500 payable to me at the time of settlement for my services.

Very truly yours,<br>
(Signed) Herman M. Watkins<br>
Herman M. Watkins"

Appended thereto the following appears: "I hereby agree to the above terms, settlement to be made thirty days within the date hereof. (Signed) Willard I. Richman (Signed) Per Joseph A. Richman".

On March 24, 1951 plaintiff executed bonds and mortgages for $125,000, secured by the Broadwood Hotel and adjoining properties, subject to the prior encumbrances mentioned in the aforesaid letter, and

providing for the repayment of the loan within 25 months in monthly instalments of $5,000 each with interest at 6%, as stipulated in the letter. These documents, executed by plaintiff, named Rose L. Watkins, the wife of defendant, as the obligee and mortgagee. All fire insurance and other documents relating to the mortgaged premises similarly named Rose L. Watkins as the mortgagee.

On March 26, 1951 plaintiff signed and delivered to defendant his check for $12,500 payable to defendant's order. On the same day a check for $125,000 payable to plaintiff's order was signed by defendant, drawn on an account at The Pennsylvania Company for Banking and Trusts designated as "Special Account for R.L.W.", and delivered to a trust company where settlement was made. The initials "R.L.W." are those of the defendant's wife.

On April 30, 1951, a check for $5,625, on May 29, 1951, a check for $5,600, and on June 27, 1951, a check for $115,505.77, the total representing the repayment of the $125,000 loan with interest at 6%, were signed by plaintiff, made payable to Rose L. Watkins, and endorsed in her name and deposited in the aforementioned bank account.

The basic factual issue was whether the $125,000 loaned to the plaintiff was money belonging to Mrs. Watkins or money belonging to her husband, the defendant. This issue was submitted to the jury and by its verdict for the plaintiff the jury determined that the money loaned belonged to the defendant. Despite the able argument of eminent counsel for defendant, we are satisfied that the lower court properly refused the motion for judgment n.o.v. Before reviewing the testimony in this regard, we will consider appellant's contention in support of his motion for new trial, that the trial judge erred in permitting plaintiff to intro-

duce parol testimony relating to and in explanation of defendant's letter to plaintiff of March 16, 1951, above set forth. We think the court properly admitted the testimony, not only because of apparent ambiguities in the letter's content, but because the issue raised by the pleadings was whether or not defendant had received usury, and parol evidence was therefore admissible not only to resolve the ambiguities but to enable the jury to determine whether the use of the name of defendant's wife was a mere device resorted to by defendant to evade the usury law. As pointed out in the opinion of the court below, ". . . The first and third paragraph indicate that defendant is to act as a broker to obtain a loan of $125,000 for plaintiff and that for his services as such intermediary he is to receive a fee of $12,500. In the second paragraph, however, it is stipulated that the mortgage securing the loan is to be given to *defendant* and that plaintiff is to obtain evidence for *defendant* that *he* 'is covered with necessary fire insurance to cover the indebtedness of $125,-000'. The question naturally arises as to why a broker should be given security for a loan obtained by him from a third person and why a broker would seek to be protected with fire insurance. Normally, of course, the lender-mortgagee, and not the borrower's broker, would receive the security and insurance.".

Where a written contract is ambiguous, oral evidence of the surrounding circumstances is admissible to explain the contract and to resolve the ambiguity: *Waldman v. Shoemaker*, 367 Pa. 587, 80 A. 2d 776; *Kittaning Coal Company v. Moore et al.*, 362 Pa. 128, 66 A. 2d 273; *Security Trust Company of Pottstown v. Stapp et al.*, 332 Pa. 9, 1 A. 2d 236. And parol evidence is always competent to show that a written agreement, lawful on its face, is in fact usurious: *Simpson v. Penn Discount Corporation et al.*, 335 Pa. 172; 5 A.

2d 796, where at pps. 175 and 176 in an unanimous opinion of this Court it is stated: ". . . The statute against usury forms a part of the public policy of the state and cannot be evaded by any circumvention or waived by the debtor: Moll v. Lafferty, 302 Pa. 354, 359. It is immaterial in what form or pretence the usurious interest is covered in the contract: Earnest v. Hoskins, 100 Pa. 551, 559. As usury is generally accompanied by subterfuge and circumvention of one kind or another to present the color of legality, it is the duty of the court to examine the substance of the transaction as well as its form, and the right to relief will not be denied because parol proof of the usurious character of the transaction contradicts a written instrument. . . .".

Giving consideration to the parol testimony thus properly admitted, the evidence adduced on behalf of the plaintiff, as correctly summarized by the lower court, ". . . was to the effect that plaintiff required a loan of $125,000 in order to complete purchase of a property on North Second Street, Philadelphia; that he engaged a broker to obtain such a loan, and that he was willing to give a mortgage on the Broadwood Hotel as additional security therefor; that this broker arranged to have plaintiff and his attorney meet with defendant; that defendant stated *he* would lend $125,-000 to plaintiff on the Broadwood Hotel and adjoining properties, but that *he* was not interested in having any mortgage on the Second Street property; that *he* wanted a premium of $12,500 for the loan in addition to 6% on the principal, which was to be repaid within 25 months in equal monthly installments; that plaintiff asked defendant for a letter setting forth the terms of the commitment; that defendant started to dictate the letter without any reference to his acting as broker in obtaining the loan, and then, saying that

he would put the mortgage in his wife's name, he revised his dictation of the letter to make it appear that he was to act as intermediary to obtain the loan for plaintiff. It was also testified that a fee of $1500.00 was paid by plaintiff to the real estate broker he engaged to obtain the loan of $125,000 for him, and that no 'services' whatsoever were rendered by defendant in connection with the loan other than to advance the money taken from the bank account which was in his name, designated as 'Special Account RLW'. It was also testified that after two monthly payments had been made by plaintiff he [the plaintiff] sought to refinance the Broadwood Hotel by increasing the amount of the first mortgage and that in order to do so, he requested defendant to subordinate the mortgage of $125,000 to the new first mortgage, offering to give defendant additional security by way of a mortgage on the Second Street property; that defendant said he was willing to subordinate the lien of his mortgage, provided the balance of the principal as well as the number of remaining installment payments would be reduced, and provided also that he would be given an additional bonus of $7500; that plaintiff refused to accede to this demand, and in order to complete the refinancing of the Broadwood Hotel the loan of $125,-000 had to be repaid in full; that plaintiff asked defendant to repay him part of the $12,500 bonus he had received for a loan to extend over a period of 25 months and which was being repaid in three months, but defendant refused to return any part of the $12,500; . . .".

The defendant's case consisted of the testimony of the defendant and his wife and of an office associate of the defendant. The latter's brief testimony had little or no bearing on the issues involved. The defendant and his wife both testified that the money in the "R.L.W." account belonged to Mrs. Watkins, but their

testimony in support of this assertion left much to be desired. Defendant's testimony was to the effect that he had been called upon by the broker of the plaintiff with reference to obtaining a loan of $125,000 on the Broadwood Hotel and that he had no knowledge whatsoever of the Second Street property; that prior to the meeting of March 16th at which the committal letter of that date was dictated by him, he had visited the hotel in the company of either the plaintiff or his father (this was denied by both of them) and made an inspection of the building and its equipment; that his fee of $12,500 had been offered to him prior to the meeting on March 16th. He denied the extended conversations testified to by plaintiff's father and counsel at the meeting on March 16th. The defendant testified that he had merely dictated the letter of committal in the form in which it was signed by him without any change or revision; that the "Special Account R.L.W." was opened in 1950 with a $400,000 check belonging to his wife and that only her money was deposited in that account; that his wife had received from the Peoples Bond and Mortgage Company a check for $401,536.90 in connection with the payment of the indebtedness of that corporation to defendant and his wife; that his wife endorsed that check and defendant deposited it in his account, thereafter drawing two checks to the order of his wife, one in the amount of $1,536.90 which she kept for her own personal use, and the other for $400,000 which she endorsed over and delivered to defendant and which he used to open the "Special Account R.L.W."; that defendant had authority through a power of attorney from his wife to sign her name in connection with the special account; he admitted that she had never drawn any checks thereon and stated that he had authority to make investments of her money without consulting her. He also denied that he had

demanded any additional bonus for subordinating the $125,000 mortgage when plaintiff sought the refinancing of the Broadwood Hotel.

Thus the defendant's testimony consisted principally of denials of the accounts of the transaction testified to by the plaintiff's witnesses, and the conflict in the testimony was for the jury. Defendant did not produce the checks above referred to in his testimony, the alleged power of attorney, nor was the original source of the money claimed to belong to his wife shown, whether as a gift from the defendant or as independently acquired by her through inheritance or otherwise. A copy of a receipt, the original of which was purportedly signed by both defendant and his wife for the $401,536.90 received from the Peoples Bond and Mortgage Company was rejected when offered in evidence. This rejection is one of the reasons assigned by defendant in support of his motion for new trial. We think the document was properly rejected. It was not only a copy but assuming the original was signed by both the defendant and his wife as indicated by the copy, such joint receipt did not establish what part of the sum received was receipted for by Mrs. Watkins. Admittedly the check made out to her, as recited in the receipt, was endorsed over and delivered to the defendant.

Turning to defendant's motion for new trial, we have already considered and disposed of the contentions in support thereof that parol evidence with respect to the defendant's committal letter of March 16, 1951 was improperly admitted and that the copy of the joint receipt just referred to was erroneously rejected. As above stated, we find no merit in either of them. There remain (1) the contention that the testimony with reference to the demand by defendant of an additional bonus of $7,500 for subordinating the lien of the $125,-

000 mortgage to plaintiff's proposed new first mortgage on the Broadwood Hotel was irrelevant and (2) the refusal of the trial judge to withdraw a juror when plaintiff's counsel asked defendant upon cross-examination whether he had charged plaintiff's father a $15,000 bonus in connection with a prior loan.

(1) We adopt the disposition of the first contention contained in the opinion of the lower court: ". . . That testimony, which was categorically denied by defendant, was admissible because it showed that defendant, without consulting his alleged principal, his wife, or considering her interests as the alleged lender, dictated the terms under which the mortgage would be subordinated, his decision being solely on the basis of the financial benefit accruing to him from the transaction. Thus, it revealed that defendant acted as if the mortgage was his own property to be exploited as he pleased for his own profit. According to plaintiff's testimony, defendant spoke of the mortgage and acted with respect to it as *his,* not his wife's, and he demanded the additional bonus of $7500.00 for no conceivable 'service' as a broker but merely for permitting the loan to remain in effect. His words and conduct in treating the mortgage as his, and not his wife's, might well be regarded by the jury as tantamount to an admission that the money loaned and secured by the mortgage was actually *his,* and not his wife's.".

(2) In direct examination defendant testified that he had made several loans to the plaintiff and his father. Upon his cross-examination by plaintiff's counsel, the following appears: "Q. You have at some times in the past invested your own money in mortgages? A. I invested—very seldom did I invest my own money in mortgages. I don't recall. Sometimes I would take some mortgages of my own in probably as accommodation. Sometimes I invest money in mort-

gages as accommodation to some people, where they couldn't be placed anywhere else, and I wanted to help somebody out, I would take a mortgage. They would be only on homes. Q. You lent Mr. Richman $240,000 on a mortgage in your own name at one time, didn't you? A. I don't know. I don't think it was my own name. I think it was the company's name; I am not sure. I think it was Peoples Bond and Mortgage Company. That I don't remember. Q. Are you quite certain of that, Mr. Watkins? A. I am almost sure. I couldn't remember now. It has been some time ago. Q. What was the security there, do you know? A. The security there was some houses. I don't really remember.". At this point counsel for defendant stated, "I don't think it is relevant to go into the previous dealings.". Upon inquiry by the court, plaintiff's counsel advised that his questioning was to test the credibility of the witness, and he then asked the witness, "You charged him a $15,000 bonus then, didn't you?". Counsel for the defendant objected and moved for the withdrawal of a juror. The court sustained the objection, stating: "First of all, it has not been established whether this was the Peoples Bond and Mortgage Company mortgage, and we do not want to get into another transaction that is too far removed.". The motion for withdrawal of a juror was denied, the court stating, "The jury will be cautioned not to pay any attention to any evidence that is ordered stricken out.". Thereafter the witness volunteered that he was positive that the mortgage inquired about was the mortgage of the Peoples Bond and Mortgage Company. Then, addressing the jury, the court said, "Therefore, again I want to caution the jury to pay no attention at all to the reference of a bonus that was paid. It is perfectly proper to pay a bonus if this was a loan given not by Mr. Watkins personally, but by Peoples Bond and Mortgage Com-

pany.". Assuming that the inquiry of plaintiff's counsel was not properly within the scope of cross-examination as ruled by the court, when consideration is given to all that preceded and followed the asking of the question which provoked defendant's motion, it does not appear to us that the withdrawal of a juror was required. The trial judge in his opinion stated that he was satisfied that the jury was not influenced by the question. The matter was one for the exercise of the trial judge's discretion: *Bourd et al. v. Berman,* 359 Pa. 183, 185, 58 A. 2d 442; *Wilhelm v. Uttenweiler,* 271 Pa. 451, 453, 112 A. 94. We cannot hold that he abused his discretion in denying the motion.

After a careful review of the record in this case, we find no reversible error and agree with the court below that the jury's verdict was fully warranted and should not be disturbed.

Judgment affirmed.