# Raby, Appellant, *v.* Commercial Banking Corporation.

Argued March 22, 1966. Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, JACOBS, HOFFMAN, and SPAULDING, JJ.

*Lloyd A. Good, Jr.,* for appellant.

*Irving J. Katz,* for appellee.

*Albert B. Gerber,* with him *Gerber, Galfand & Berger,* for interested party under Rule 48.

OPINION BY JACOBS, J., June 17, 1966:

The question in this case is whether an individual who co-signs a note with a corporation for a loan can recover alleged usurious interest paid by her to the lending institution. After trial at which a jury had

been waived, the lower court found for the defendant lending institution. We affirm.

The facts, viewed in the light most favorable to the verdict-winner, establish that on May 31, 1960, a property improvement contract and note were executed in the principal amount of $52,207, providing for repayment to Commercial Banking Corporation ("Commercial") within 36 months. The property improvement contract and note each contained the typed name "RoANOKE CONSTRUCTION Co." in the lower right-hand corner. Below this were the following four signatures, one underneath the other: "William Stuempfig, Pres.", "W. S. Spaulding, Secty.", "William Stuempfig", and "Ann F. Stuempfig". Immediately to the left of the first three on adjacent dotted lines appeared the signatures of "Walter Stuempfig, Jr.", "Rachel T. Stuempfig", and "Maude E. Raby", one underneath the other. In the lower left-hand corner immediately to the left of these three on adjacent dotted lines appeared the signature of a witness. Roanoke Construction Co. ("Roanoke") received the entire proceeds of the loan, $40,000, to complete a construction contract it had with the owners of "Chel-Wayne", on which property Roanoke was building a Sears Roebuck Store. Plaintiff owned one-half of the property, "Chel-Wayne", and William, Walter and Rachel Stuempfig each owned one-sixth of the property. William, who was plaintiff's nephew, was also President of Roanoke and negotiated the loan with defendant.

Roanoke had financed and re-financed four transactions with Commercial before the one at issue. The Vice-President of Commercial testified that the present loan was made to Roanoke Construction Co. after receiving a corporate resolution of the Board of Directors of Roanoke authorizing the loan, that the checks for the $40,000 were cashed by Roanoke Construction Co., that when a note was executed for Commercial the

guarantors and endorsers were put on the same note as the principal "to simplify the procedure and simplify the paper work in closing", and that when this loan was negotiated, William Stuempfig was asked for collateral security in the form of endorsers. Plaintiff and the three other owners of Chel-Wayne signed the contract and note. Roanoke went into bankruptcy in November, 1961. Plaintiff paid the unpaid balance claimed due on the note, $11,461.69,[1] and brought this action pursuant to the Usury Statute, Act of May 28, 1858, P. L. 622, §2, 41 P.S. §4, to recover that portion of the payment which she claims was in excess of the legal rate of interest.

Section 313 of the Business Corporation Law of May 5, 1933, P. L. 364, 15 P.S. §2852-313, provides:

"No business corporation shall plead or set up usury, or the taking of more than six per cent interest, as a defense to any action brought against it to recover damages on, or to enforce payment of, or to enforce any other remedy on, any mortgage, bond, note, or other obligation executed or effected by the corporation."

This statute bars a corporation from claiming usury either as a "shield" to defend an action to recover alleged usurious interest or as a "sword" to recover money already paid and alleged to be usurious. *Pink Lady, Inc. v. William Penn Loan Co.*, 189 Pa. Superior Ct. 187, 150 A. 2d 154 (1959).

After hearing all the evidence in order to examine the substance of the transaction as well as its form, the lower court was satisfied "that defendant was dealing with Roanoke Construction Company in making the loan, that the corporation's officers understood that

---

[1] Financial dealings after this need not be recounted here since they are not necessary to decide the case and are, in any event, not helpful to plaintiff's argument.

this was a corporate loan, that the fund was paid by defendant to the corporation, and that plaintiff's only connection with the transaction was as a surety or guarantor of the repayment of the loan." The evidence supports the lower court's conclusion that the corporation was the principal debtor and we conclude that plaintiff was no more than an accommodation party as defined by the Pennsylvania Uniform Commercial Code—"one who signs the instrument in any capacity for the purpose of lending his name to another party to it." Act of April 6, 1953, P. L. 3, §3-415(1), as amended by Act of October 2, 1959, P. L. 1023, §3, 12A P.S. §3-415(1).

Parol evidence was admissible to show that the plaintiff was an accommodation party.[2] Uniform Commercial Code, 12A P.S. §3-415(3).[3] See also *First National Bank v. Stolar*, 130 Pa. Superior Ct. 480, 197 A. 499 (1938). This evidence revealed that this loan was not a loan to Maude E. Raby or to any of the other individual signers but was in fact a loan made directly to the corporation, Roanoke Construction Co. It was the corporation which needed the money to perform a contract; the corporation's board of directors by resolution authorized the loan; the corporation received the money. William Steumpfig, plaintiff's nephew, who was both president of Roanoke and one of the owners of "Chel-Wayne" with whom Roanoke had contracted to install an air-conditioned building, negotiated the loan. Plaintiff played no part in this negotiation; she, as an individual with no financial interest in Roanoke,

---

[2] Neither party has objected to the use of the parol evidence.

[3] This provides: "As against a holder in due course and without notice of the accommodation oral proof of the accommodation is not admissible to give the accommodation party the benefit of discharges dependent on his character as such. *In other cases the accommodation character may be shown by oral proof.*" (Emphasis added)

cannot be deemed to have wanted to borrow $40,000 personally. The fact that her signature appears, together with the signatures of the Roanoke corporate officers, on the face of the note does not make her, as a matter of law, a principal obligor, when the evidence establishes that she was an accommodation party.

The financial dealings in this case do not reveal an attempt to evade the usury laws by insisting on a corporate obligation when the true debtor is an individual, so that *Walnut Discount Co. v. Weiss*, 205 Pa. Superior Ct. 161, 208 A. 2d 26 (1965), does not govern. We agree with the reasoning of *Walnut Discount Co.*, supra, that §313 of the Business Corporation Law precludes the defense of usury only in the case of a bona fide corporate loan and not in the case of a loan to an individual who is the real debtor, even though he appears on the face of the document to be a guarantor of a corporate obligation.

But the situation here, unlike in *Walnut Discount Co.*, involves a true corporate obligation. We, therefore, reach the question undecided in *Walnut Discount Co.* and join the majority rule in holding that individual accommodation parties and guarantors of a true corporate obligation are precluded from interposing the defense of usury. See *Pardee v. Fetter*, 345 Mich. 548, 77 N.W. 2d 124 (1956); *General Phoenix Corp. v. Cabot*, 300 N.Y. 87, 89 N.E. 2d 238 (1949);[4] *Dahmes v. Industrial Credit Co.*, 261 Minn. 26, 110 N.W. 2d 484 (1961); *General Motors Acceptance Corp. v. Larson*, 110 N.J. Eq. 305, 159 A. 819 (1932); and 63 A.L.R. 2d 924, 950. An individual who signs a note as an accommodation party to a corporation so that corporation can obtain a loan is entitled to no more protection than the corporate borrower whom he accommodates.

---

[4] This case and those it relies on render *Bock v. Lauman*, 24 Pa. 435 (1855), an inaccurate interpretation of New York Law.

He binds himself to perform in accordance with the obligation of his principal, the corporation, which in such cases is the borrower. Since the borrower cannot assert the defense of usury, the accommodation party cannot.

Judgment affirmed.