## All Purpose Finance Corp. *v.* D'Andrea, Appellant.

Argued January 10, 1967. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Malvin L. Skaroff,* for appellants.

*Marvin Allanoff,* for appellee.

OPINION BY MR. JUSTICE O'BRIEN, November 14, 1967:

On April 25, 1965, appellee caused judgments to be entered against appellants by confession, on a note executed by them. Appellants thereafter filed a petition to open the judgment, alleging that the loan was usurious, and that $3,500 was paid to appellee on account of the obligation, for which credit was not received. A hearing on the petition and rule was held on March 15, 1966, and on May 16, 1966, the court signed an order discharging the rule. This appeal followed.

Appellants executed this judgment note pursuant to a loan agreement between appellee and Jay-Bee Plumbing and Heating Company, a New Jersey Corporation, under the terms of which Jay-Bee was the borrower and appellants, as well as other parties, became liable as surety for the loan. The court below found as follows: "The record discloses, according to Mr. D'Andrea, one of the defendants, that the Jay-Bee Plumbing and Heating Company, Inc., (hereinafter referred to as Jay-Bee), was in financial need and that it was unable to negotiate, based on its own assets, a loan in the amount required. Negotiations were then conducted initially through one Mr. Howard Lipkin who in turn introduced the defendants and others interested in Jay-Bee to plaintiff. Certain properties belonging to the defendants, inter alia, were to be pledged as security for the loan, some in Pennsylvania and some in New Jersey. Mr. D'Andrea owned one share of stock

in Jay-Bee and the balance of stock in Jay-Bee (20 shares total) was owned by a Mr. LaSassa and his wife. At the time of the transaction, Jay-Bee had approximately fifteen jobs, of varying size, running in Pennsylvania and New Jersey; the loan was required, according to Mr. D'Andrea, because the 'company needed the money.' In addition, the record discloses, according to Mr. D'Andrea, that the money borrowed was actually used by Jay-Bee.

"On or about May 1, 1964, a check was issued to Jay-Bee by plaintiff in the amount of $24,400 same being negotiated by Jay-Bee. On the same date, a written agreement was entered into between plaintiff, Jay-Bee, the defendants and Mr. and Mrs. LaSassa. In this agreement, the defendants and the other individual signatories were designated as sureties for a $25,000 loan to be made to Jay-Bee, payable within one year, with interest at the rate of 2% per month; the loan was to be repaid in eleven $500 installments and a final installment of $25,500, a total of $31,000. The agreement further provided for an optional method of repayment which is not material to the issues presented in the instant case. In addition, the corporate resolution of Jay-Bee was introduced into evidence approving and authorizing, inter alia, the execution of judgment notes relative to this loan in accordance with the aforesaid agreement."

In reviewing the record, we reach the same conclusion as the court below that the loan was usurious. However, we further agree with the court below in its conclusion that this loan was made to Jay-Bee, a New Jersey corporation, for its business purposes, and therefore reach the same issue as was before the trial court, that is: "May individual sureties to a usurious loan made to a corporation raise the defense of usury where the corporation itself is precluded from raising the defense of usury?" We agree with the court below that

this question must be resolved adversely to the appellants.

The Business Corporation Law, Act of May 5, 1933, P. L. 364, §313, 15 P.S. §2852-313, provides as follows: "No business corporation shall plead or set up usury, or the taking of more than six per cent interest, as a defense to any action brought against it to recover damages on, or to enforce payment of, or to enforce any other remedy on, any mortgage, bond, note, or other obligation executed or effected by the corporation." With this Act in mind, it is clear that Jay-Bee could not itself raise the defense of usury. An issue involving usury was before the Superior Court in the case of *Walnut Discount Co. v. Weiss*, 205 Pa. Superior Ct. 161, 208 A. 2d 26 (1965), where the late Judge FLOOD, speaking for a unanimous court, reviewed in great detail pertinent matter that is before us. He stated: "The court below found as facts that the appellees were actually the principal obligors and Department Store Sales, Inc., the new corporation, was merely an accommodation maker or surety, that the corporate device was used by the loan company in an attempt to take advantage of §313 of the Business Corporation Law of May 5, 1933, P. L. 364, art. III, 15 PS §2852-313, to avoid the defence of usury, but that the appellees, as individuals, were not prevented by §313 from asserting the defence of usury. The court consequently held, under the Usury Act of May 28, 1858, P. L. 622, §2, 41 PS §4, that all amounts paid in excess of 6% simple interest should be credited on the principal sum of $2900 and opened the judgment in order that the amount, if any, remaining due might be determined.

"We have been referred to no case in our appellate courts determining the effect of §313 of the Business Corporation Law upon the obligation of individual endorsers of a corporate obligation bearing usurious interest. An early Pennsylvania case, considering a simi-

lar New York statute, held that a corporate obligation carrying usurious interest was valid as to the corporation but that the individual accommodation endorsers could successfully raise the defence of usury. Bock v. Lauman, 24 Pa. 435 (1855). On the other hand, the New York Court of Appeals, construing its own statute, [footnote omitted] has held that the individual guarantors of a corporate obligation are precluded from interposing the defence of usury. General Phoenix Corp. v. Cabot, 300 N.Y. 87, 89 N.E. 2d 238 (1949). The weight of authority is in accord with the New York view. General Motors Acceptance Corp. v. Larson, 110 N.J. Eq. 305, 159 A. 819 (1932); Pardee v. Fetter, 345 Mich. 548, 77 N.W. 2d 124 (1956); Dahmes v. Industrial Credit Co., 261 Minn. 26, 110 N.W. 2d 484 (1961); 63 A.L.R. 2d 924, 950, §12.

"Where, however, the obligation is really that of an individual, and the form of a corporate obligation is used only in an attempt to evade the usury laws, there is a split of authority. It is held in some jurisdictions that the individual may successfully raise the defence of usury in such a case, even though he appears on the face of the documents to be an endorser or guarantor of a corporate obligation. [citing cases].

"On the other hand, some courts have held that the parties were free to frame their transactions so as to take advantage of the corporate exemption from the usury laws, even though the loan was in reality made to individuals, and if a corporation actually executed the contract with the individuals as guarantors, the usury defence was precluded, in the absence of fraud. [citing cases]."

In *Raby v. Commercial Banking Corp.*, 208 Pa. Superior Ct. 52, 220 A. 2d 659 (1966), the Superior Court had before it a case where the question was whether an individual who co-signs a note with a corporation for a loan can recover alleged usurious interest paid by the

individual to a lending institution. In that case, the Superior Court properly found that the aforementioned §313 of the Business Corporation Law "bars a corporation from claiming usury, either as a 'shield' to defend an action to recover allegedly usurious interest, or as a 'sword' to recover money already paid and alleged to be usurious. Pink Lady, Inc. v. William Penn Loan Co., 189 Pa. Superior Ct. 187, 150 A. 2d 154 (1959)."

Again that court agreed with the reasoning of *Walnut Discount Co.,* supra, that the Business Corporation Law "precludes the defense of usury only in the case of a bona fide corporate loan, and not in the case of a loan to an individual who is the real debtor, even though he appears on the face of the document to be a guarantor of a corporate obligation." The situation in *Raby,* as in the instant case, however, involves a true corporate obligation. The Superior Court properly decided in that case that: ". . . individual accommodation parties and guarantors of a true corporate obligation are precluded from interposing the defense of usury." As was said by the Superior Court in *Raby,* and which is applicable in the instant case: "An individual who signs a note as an accommodation party to a corporation so that corporation can obtain a loan, is entitled to no more protection than the corporate borrower whom he accommodates. He binds himself to perform in accordance with the obligation of his principal, the corporation, which in such cases is the borrower. Since the borrower cannot assert the defense of usury, the accommodation party cannot."

Order affirmed.

Mr. Justice MUSMANNO took no part in the consideration or decision of this case.

———

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

"May individual sureties to a usurious loan made to a corporation raise the defense of usury where the

corporation itself is precluded from raising the defense of usury?" As the majority views this case, that is the issue confronting the Court today. I, too, would so style the issue were it not for the fact that I strongly believe the time has come to eliminate the distinction between primary obligors and accommodation parties for purposes of determining which individuals may raise the defense of usury. As I view the statutes prohibiting the charging of interest in excess of six per cent, except to corporations, *no individual,* whatever may be the hat he wears, can be forced to pay such interest. I reach this conclusion not only because I think it is dictated by our strong public policy against usurious interest rates, but also because the current doctrine, as formulated by two recent Superior Court cases,[1] is totally unrealistic and, as a practical matter, unworkable.

To decide whether an individual may raise the defense of usury, it is under the majority approach now necessary to determine the status of that individual vis-a-vis the lender. If he is found to be the primary obligor, he may avail himself of the usury defense; but if he is merely a surety or an accommodation party to a legitimate corporate loan, he is bound just as is the corporation. The genesis of this test in Pennsylvania can be found in *Walnut Discount Co. v. Weiss,* 205 Pa. Superior Ct. 161, 208 A. 2d 26 (1965). *Weiss* involved a usurious loan made to a closed corporation whose sole stockholder was the son of the appellee-defendants. The parents of this sole stockholder were named on the loan agreement as "guarantors". Thus, when the corporation defaulted and these guarantors resisted payment of any interest *over* six per cent, the lender

---

[1] *Walnut Discount Co. v. Weiss,* 205 Pa. Superior Ct. 161, 208 A. 2d 26 (1965); *Raby v. Commercial Banking Corp.,* 208 Pa. Superior Ct. 52, 220 A. 2d 659 (1966).

contended that they should be bound just as would be the corporation whose obligation they guaranteed. In striking down this contention, the Superior Court noted that this corporation was specially formed to borrow money, that the so-called "guarantors" were really the true borrowers, and that the entire transaction was engineered by the parents to bail their son out of financial disaster. Of course, although the issue was not decided, the clear implication of this decision was that a true surety to a legitimate corporate loan could not raise the defense of usury. Such implication blossomed into a true holding in *Raby v. Commercial Banking Corp.,* 208 Pa. Superior Ct. 52, 220 A. 2d 659 (1966). This case involved a legitimate loan to an established construction company, and an accommodation party having no financial interests in that company. It was held that Maude Raby, the accommodation party, was bound to repay the full amount of the loan with *all* interest.

. Whatever may have been the wisdom of the rule set down in *Raby,* it first appeared easy to apply. Perhaps this was so because the facts in *Weiss* and *Raby* represented the very opposite poles of the problem. Unfortunately, filling in the grey areas has clearly demonstrated the unworkability of this rule. In the present case, for example, the majority has decided that these facts fall on the *Raby* side of the line. It is true that the corporate borrower here, Jay-Bee Corp., was not created just to borrow money. But, the majority seems to ignore completely the significant fact that while *Raby* concerned a surety who had no connection whatsoever with the corporation, the accommodation parties here are the *sole stockholders* of Jay-Bee. When in fact the corporation and the sureties are really but one entity, a distinction based solely on the label "accommodation party" is meaningless.

I will not further belabor what I think should now be clear. For purposes of the availability of a usury defense, any rule of law requiring courts to distinguish between primary obligors and accommodation parties can only lead to inconsistent decisions and haphazard line drawing, especially in the face of clever money lenders, complicated refinancing of previously existing loans, family corporations, and prefabricated corporate shells.[2]

Nevertheless, if a more careful factual analysis of each case could repair this area of law, I would not so strongly dissent. However, a test designed to make judges and fact finders "tilt at windmills" is often indicative of a more fundamental defect. The fundamental defect present in the *Weiss-Raby* test goes to the very heart of this Commonwealth's public policy against usury, for it assumes that certain individuals may still be compelled to pay interest in excess of six per cent. Since 1858 a borrower could recover any interest paid in excess of the lawful rate. The Act of May 28, 1858, P. L. 622, §2, 41 P.S. §4, originally contained *no* exceptions to that rule. Today, §313 of the Business Corporation Act[3] contains the *only* exception relevant to this case. The words of that statute are clear: "No business corporation shall plead or set up usury . . . as a defense . . . ." These words say *nothing* about an individual who acts as surety for a corporate loan. As to such a party, the basic 1858 law still ap-

---

[2] Pennsylvania has not been the only jurisdiction forced to engage in unrealistic line drawing to effectuate similar rules. For example, in New Jersey, it seems that the test for determining when the corporate shell will be pierced turns not so much on whether the company was *formed* to borrow money as on whether it was formed at the suggestion of the borrower or lender. Compare *Monmouth Capital Corp. v. Holmdel Village Shops, Inc.*, 92 N. J. Super. 480, 224 A. 2d 35 (1966) with *Gelber v. Kugel's Tavern, Inc.*, 10 N.J. 191, 89 A. 2d 654 (1952).

[3] Act of May 5, 1933, P. L. 364, §313, 15 P.S. §1313.

plies. And well it should. In each of the three cases discussed in this opinion thus far, one fact remains constant: an *individual* is asked by the money lender to reach into his own pocket and pay interest at a usurious rate. It should be immaterial whether the lender originally *expected* a corporation to pay the loan, or whether the individual was always the prime target. The usury statute must concern itself with actuality, not expectations.

As early as 1855 this Court, when called upon to interpret New York's usury law and its corporate exception, made the following observation: "Regarding such laws as the means adopted by the state to protect people against their own weakness, and against the power of money lenders, we must suppose that corporations are excluded from this protection, because they have not the same need of it that individuals have: perhaps because of their being usually powerful associations, and the associates not usually being personally liable for their contracts." *Bock v. Lauman,* 24 Pa. 435, 448 (1855). These reasons for the corporate exception remain just as valid today.[4] The corporation does not *need* the protection of the usury statute because it has its own, built in protections. But an individual, no matter how he is classified or labelled, does not have limited liability. He cannot pass his risks to a collection of stockholders.

Time and again this Court has said that "the statute against usury forms a part of the public policy of the state and cannot be evaded by any circumvention

---

[4] In sustaining the constitutionality of the corporate exception statute in the face of a Fourteenth Amendment Equal Protection argument, a federal court distinguished corporations from individuals in the same way for purposes of protection from usury. *Brierley v. Commercial Credit Co.,* 43 F. 2d 724 (E.D. Pa. 1929), aff'd, 43 F. 2d 730 (3d Cir.), cert. denied, 282 U.S. 897, 51 S. Ct. 182 (1930).

or waived by the debtor." *Simpson v. Penn Discount Corp.,* 335 Pa. 172, 175, 5 A. 2d 796, 798 (1939). So also have we said that it is the duty of this Court to examine the substance of a transaction, as well as the form. To do this adequately required that we strip away the shackles of the parol evidence rule in order to uncover usury. *Simpson v. Penn Discount Corp.,* supra. We have gone behind false recitals of inflated principal to uphold the usury statute. *Fitzsimons v. Baum,* 44 Pa. 32 (1863). In *Richman v. Watkins,* 376 Pa. 510, 103 A. 2d 688 (1954), the Court struck down a so-called "broker's commission" when it was discovered that the broker was in reality the lender himself. Finally, renewed judgments which cleverly incorporated usurious interest have been declared violative of the statute. *Moll v. Lafferty,* 302 Pa. 354, 153 Atl. 557 (1931). In all these cases this Court has remained conscious of the fact that "usury is generally accompanied by subterfuge and circumvention of one kind or another to present the color of legality, . . ." *Simpson v. Penn Discount Corp.,* supra. Yet, by the rule which the majority has approved today, we have carved out a single area of usury where the subterfuge, so vigorously uprooted in the past, is now permitted to blossom with flowers of the brightest colors.

In my opinion, the usury statute and its corporate exception permit but a single rule: If a man loans money to a corporation, the interest rate on that loan can be whatever the market will bear; but, this lender is on notice that whenever an *individual* is asked to repay the loan, no interest above six per cent may be recovered. The lender's plea that such a rule would foreclose loans to small corporations is simply without merit. If a lender balks at loaning money to a company because of its allegedly weak financial structure, such a lender can certainly require sufficient collateral, advanced by individuals if that is desired, to

insure the return of principal as well as the legal rate of interest.[5] On the other hand, if *more* than this amount is sought by the lender, his recourse must be to the Legislature for a revision of the lawful interest rate vis-a-vis individual sureties to corporate obligations. This Court is empowered only to read and interpret statutes, not to redraft and amend them.

More than one hundred years ago, in striking down an attempt to evade the usury laws by the false inflation of principal, we said: "Courts of justice would be very stupid if they could not see through so transparent a device to evade the statute, and very feeble if, seeing the usury, they could not reach it . . . ."[6] In my opinion, the *Weiss-Raby* test comes dangerously close to fulfilling this disturbing prediction.

I dissent.

---

[5] The president of the All Purpose Finance Co., Samuel Allanoff, admitted that his interest in the financial condition of the borrower went only to whether they could put up enough collateral to insure a return of the money loaned. See N.T. 59a: "Q. I understand. Now as far as this Jay-Bee Plumbing was concerned, did they present a financial statement to you? A. We don't need no financial statement. Our loan must be based on real estate security. Financial statement is—we are not required, a financial statement, when we make a loan. Only thing we require is enough collateral for our money."

---

[6] *Fitzsimons v. Baum*, 44 Pa. 32, 42 (1862).