J-A16030-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| FIRST SURETY FINANCIAL, LLC | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| TAYLOR ASSOCIATES LP, TAYLOR GEN/PAR, LLC AND ZAMIAS SERVICES | |
| v. | |
| A.R. POPPLE, INC., AND ANTHONY POPPLE, INDIVIDUALLY | |
| APPEAL OF: TAYLOR ASSOCIATES LP, TAYLOR GEN/PAR, LLC | No. 3233 EDA 2014 |

Appeal from the Order Entered October 7, 2014
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): October Term, 2010 No. 002749

BEFORE: LAZARUS, OLSON and PLATT,* JJ.

MEMORANDUM BY OLSON, J.:                    **FILED OCTOBER 05, 2015**

Appellants, Taylor Associates, LP and Taylor Gen/Par, LLC, appeal from the order entered on October 7, 2014. We affirm.

The trial court provided us with a thorough summary of its findings of fact, which the trial court made at the conclusion of a seven-day bench trial. As the trial court explained:

> Plaintiff First Surety [Financial, LLC (hereinafter "Plaintiff First Surety")] is a private specialty lender that provides construction industry financing to contractors and subcontractors. [Defendant, and current Appellant, Taylor Associates, LP (hereinafter "Appellant Taylor Associates")] is a limited partnership formed for the purpose of building a shopping center which would come to be known as Taylor Commons. Defendant[, and current Appellant,] Taylor Gen/Par, LLC, [(hereinafter "Appellant Taylor Gen/Par")] is

*Retired Senior Judge assigned to the Superior Court.

a limited liability company and the general partner of [Appellant Taylor Associates (hereinafter, collectively, "Appellants")].

Defendant Zamias Services, Inc. [(hereinafter "Defendant Zamias")] is an agent of [Appellant Taylor Associates] and acted as the construction manager for [Appellant Taylor Associates]. [Defendant Zamias] was responsible for the overall management, development and leasing on behalf of [Appellant Taylor Associates]. [Defendant Zamias] was also responsible for handling contractor payment requisitions, which included the provision of payment advice to [Appellant Taylor Associates], payment to contractors, project funding, and recommending the approval of change orders. Samuel Zamias, Stephen Zamias, George Zamias, and Damian Zamias are managing members of [Appellant Taylor Gen/Par]. The managing members have the ability to make decisions and bind [Appellant Taylor Gen/Par].

Additional Defendant, A.R. Popple, Inc. [(hereinafter ("Popple")], is the contractor hired by [Appellant Taylor Associates] to perform the site work on the Taylor Commons project.

In October [] 2007, [Appellant Taylor Associates] and Popple entered into a Construction Contract under which Popple was to perform site improvement work for the Taylor Commons project. Popple's duties under the Construction Contract included excavation, grading, and the installation of sanitary sewer systems and other piping and utility work. In exchange for the site improvement work, Popple was to receive a lump sum price of $6,388,721.00.

From 2007 through June 5, 2009, [Plaintiff First Surety] provided construction financing to Popple for the Taylor Commons project. Popple entered into a Loan Agreement with [Plaintiff First Surety] under which [Plaintiff First Surety] authorized Popple to borrow up to $750,000.00 This Loan functioned as a line of credit. In April [] 2008, [Plaintiff First Surety] increased the loan threshold to $1.1 million. In August 2008, the threshold was again increased, this time to $1.8 million. In September [] 2008, the threshold was increased to $2.1 million.

In order to secure the funds loaned to Popple under the Loan Agreement, Popple executed a Note and Security Agreement. In the note, [Plaintiff First Surety] could increase the amount and term of the Loan to protect the security set forth in the Security Agreement. In order to obtain funding from [Plaintiff First Surety], Popple had to make written requests for funds as needed. Popple also had to accompany such requests with backup information to support the request. . . .

On October 12, 2007, [Plaintiff First Surety], Popple, and [Appellant Taylor Associates] entered into an Assignment Agreement. Subject to certain conditions, the Assignment Agreement provides that payments under the Construction Contract were to be made directly to [Plaintiff First Surety]. The Assignment [Agreement] states:

(1) <u>Assignment</u> – [Popple] assigns, transfers, sells and conveys to [Plaintiff First Surety] all of its entire right, title and interest in and to payments due under the Construction Contract including, the right to receive payment directly from [Appellant Taylor Associates], provided [Popple] is not then in default under said contract or has otherwise committed acts or omitted obligations that give rise to suspension or termination of payments from [Appellant Taylor Associates] to [Popple]. In such event, this assignment shall no longer be binding on [Appellant Taylor Associates].

(2) <u>Payment</u> – Until and unless the Loan is paid in full, [Appellant Taylor Associates] shall deliver to [Plaintiff First Surety][fn.1] any and all monies due to or to become to due to [Popple] under the Construction Contract. All such payments shall be sent by [Appellant Taylor Associates] to [Plaintiff First Surety] at its office located at the address stated above and shall be addressed to the attention of Gregory LeFevre. Under no circumstances, is said payments to be deposited/negotiated by [Popple] without written authorization from [Plaintiff First Surety].

[fn.1] The [Assignment] Agreement actually states that delivery be to "Assignor" who is Popple. This is a typographical error, as the [Assignment]

- 3 -

> Agreement would be meaningless if the "Assignor" was going to get the money it was assigning.

In essence, [the] Assignment Agreement created a three-party relationship where [Plaintiff First Surety] would, at the written request of Popple and after review, disburse cash advances to Popple. These cash advances were to be used to pay costs associated with the Taylor Commons project under the Construction Contract. As Popple performed the work, Popple would submit applications for payment to [Appellant Taylor Associates]. Thereafter, [Appellant Taylor Associates would] pay the amount requested by Popple directly to [Plaintiff First Surety].

In the Spring of 2008, a huge "mine void" was discovered underground where the parking lot for Taylor Commons was to be located. The mine void created a dangerously unstable area susceptible to collapsing. The discovery of the mine void prompted [Appellant Taylor Associates] to provide additional funding to Popple. On November 5, 2008, [Defendant Zamias], under the authority and direction of [Appellant Taylor Associates], issued a [$175,000.00] check to Popple. The check was to reimburse Popple and Popple's subcontractor(s) for the work they completed as part of the significant change order for mine remediation. On December 12, 2008, [Appellant Taylor Associates] provided two more checks in the amount of [$12,500.00] each, bringing the total amount to [$200,000.00].

Between August 19, 2009 and April 2, 2010, [Appellant Taylor Associates] issued ten more payments directly to Popple. The total amount of these ten checks was $490,385.54. Additionally, [Appellant Taylor Associates] issued [15] more checks. These checks were paid either to Popple and a subcontractor jointly[,] or directly to one of Popple's subcontractors. The total amount of these payments was $692,394.33.

In total, [Appellant Taylor Associates] issued [28] payments to parties other than [Plaintiff First Surety (hereinafter "Misdirected Payments")], which totaled $1,372,779.87. [Plaintiff First Surety] did not have specific knowledge of the

Misdirected Payments because [Plaintiff First Surety] was still receiving sporadic payments from Popple.

[Appellant Taylor Associates] first advised [Plaintiff First Surety] that they intended to make payments directly to one of Popple's subcontractors in January [] 2009. John Spory, a representative of [Defendant Zamias,] informed [Plaintiff First Surety] that the subcontractor, Newport Aggregate, had threatened to file a [mechanics'] lien claim for the value of its unpaid work on the Taylor Commons project. [Plaintiff First Surety] granted permission to [Defendant Zamias], on behalf of [Appellant Taylor Associates], to make a payment of $35,380.01 to Newport Aggregate. [Appellant Taylor Associates] then issued the balance of the payment to [Plaintiff First Surety]. Aside from the payment to Newport Aggregate, [Plaintiff First Surety] was never aware of or notified of any of the other payments made directly to Popple or Popple's subcontractors.

[Plaintiff First Surety's] loan to Popple was never paid in full. The parties stipulated that the principal owed at the end of 2009 was $788,548.79, plus interest and fees, totaling $2,328,335.34. . . .

[On October 21, 2010, Plaintiff First Surety filed a complaint against Appellants. The complaint claimed that: Appellants breached the Assignment Agreement when they "fail[ed] to make [the] payments [it] owed [to Popple,] for [Popple's] work[,] directly to [Plaintiff First Surety]" (and, instead, paid Popple or Popple's subcontractors directly); and, Appellants tortiously interfered with Plaintiff First Surety's contractual relationship with Popple, by "agreeing to by-pass [Plaintiff First Surety] when making payments for [Popple's] work." Plaintiff First Surety's Complaint, 10/21/10, at ¶¶ 47 and 52.] . . .

On December 7, 2010, [Appellants] filed a joinder complaint against [Popple[1]]. . . . [Appellants] alleged breach of contract against [Popple].

On September 21, 2012, [Plaintiff First Surety] filed a motion to bifurcate [Appellants'] joinder claims against Popple from [Plaintiff First Surety's] claims against [Appellants]. On October 4, 2012, [the trial court] granted [Plaintiff First Surety's] motion to bifurcate.

A bench [trial] was conducted on October 22, 2012, October 23, 2012, October 25, 2012, October 26, 2012, [] November 6, 2012[, November 7, 2012, and November 27, 2012]. . . . On July 18, 2014, [the trial court entered the following order:

> AND NOW, this 18th day of July, 2014, after a non-jury trial of this matter, and in accord with the Findings of Fact and Conclusions of Law issued simultaneously, it is ORDERED as follows:
>
> 1. A finding is entered in favor of [Plaintiff First Surety] and against [Appellants] in the amount of $788,584.79, plus prejudgment interest of six percent per annum from December 31, 2009 of $215,046.10, for a total of $1,003,594.89.
>
> 2. A finding is entered in favor of [Defendant Zamias], against [Plaintiff First Surety].

Trial Court Order, 7/18/14, at 1.]

[Appellants] timely filed a motion for post-trial relief. . . . On October 7, 2014, [the trial court denied Appellants' post-trial motion].

[Appellants] timely filed a notice of appeal on November 6, 2014.

---

[1] Within the joinder complaint, Appellants also named Anthony Popple, individually, as an additional defendant.

Trial Court Opinion, 12/31/14, at 1-2 and 5-8 (some internal capitalization, footnotes, and emphasis omitted).

Now on appeal, Appellants raise the following claims:

1. Whether the trial court erred in failing to find the Loan Agreement and the Assignment Agreement, which formed the basis of [Plaintiff First Surety's] claims against [Appellants], are illegal and, therefore, unenforceable pursuant to the criminal usury provisions of the Pennsylvania Crimes Code, [18 Pa.C.S.A. § 911(b) and (h)(1)(iv)]?

2. Whether the trial court erred in interpreting the plain language of the Assignment Agreement and the Construction Contract in failing to find [Popple's] default on the Construction Contract relieved [Appellants] of their obligation to make payments to [Plaintiff First Surety] under the Assignment Agreement?

3. Whether the trial court erred in bifurcating [Appellants'] claims and defenses relating to [Popple]?

4. Whether the trial court erred in interpreting the plain language of the Assignment Agreement, the Loan Agreement, and the Note by determining [Appellants were] required to issue payments to [Plaintiff First Surety] under the Assignment Agreement beyond the original amount of the Loan Agreement?

5. Assuming it was proper to find liability on [Plaintiff First Surety's] breach of contract claim, whether the trial court erred in awarding damages that were not supported by the evidence and were impermissibly speculative?

6. Assuming it was proper to find liability on [Plaintiff First Surety's] breach of contract claim, whether the trial court erred in awarding damages for payments by [Appellants] after [Popple] defaulted on the Construction Contract and for payments after the original amount of the Loan Agreement was paid in full?

- 7 -

Appellants' Brief at 5-6 (internal footnotes and some internal capitalization omitted).

We have reviewed the briefs of the parties, the relevant law, the certified record, and the well-written opinions from the able trial judge, the Honorable Albert John Snite, Jr. We conclude that the claims raised in Appellant's brief are meritless and that Judge Snite's opinions, filed on July 18, 2014 and December 31, 2014, meticulously and accurately explain why Appellant's claims fail.[2] Therefore, we adopt the trial court's opinions as our

_____

[2] With respect to Appellants' first claim on appeal, Appellants claim that the Loan Agreement between Plaintiff First Surety and Popple established an interest rate that was illegal under 18 Pa.C.S.A. § 911(h)(1)(iv). Because of this, Appellants claim, the Loan Agreement between Plaintiff First Surety and Popple was "unenforceable." Appellants' Brief at 23. Further, Appellants claim, since the Assignment Agreement incorporated the Loan Agreement and its illegal term, the Assignment Agreement is also unenforceable. *Id.*

The trial court concluded that Appellants' claim failed because the loan was a business loan, for a business purpose, and 18 Pa.C.S.A. § 911(h)(1)(iv) did not apply to such loans. *See* Trial Court Opinion, 12/31/14, at 9. We note that, even if 18 Pa.C.S.A. § 911(h)(1)(iv) were applicable to business loans, Appellants' claim would fail because Popple is a Pennsylvania corporation and, under 15 Pa.C.S.A. § 1510(a), Popple cannot use "the taking of more than the lawful rate of interest . . . as a defense to any action or proceeding brought against it to . . . enforce payment of any obligation executed or effected by" it. 15 Pa.C.S.A. § 1510(a); *see also* Appellants' Complaint to Join, 12/7/10, at ¶ 5 ("A.R. Popple, Inc., is a duly organized corporation existing under the laws of the Commonwealth of Pennsylvania"). Further, since Popple cannot use "the taking of more than the lawful rate of interest" as a defense to its obligations, Appellants cannot do so either. *See*, *e.g.*, *All Purpose Fin. Corp. v. D'Andrea*, 235 A.2d 808, 811 (Pa. 1967) ("An individual who signs a note as an accommodation party to a corporation so that corporation can obtain a loan is entitled to no more protection than the corporate borrower whom he accommodates. He binds himself to perform in
*(Footnote Continued Next Page)*

own.  In any future filings with this or any other court addressing this ruling, the filing party shall attach a copy of the trial court's opinions.

Order affirmed.  Jurisdiction relinquished.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/5/2015

---

*(Footnote Continued)* ————————

accordance with the obligation of his principal, the corporation, which in such cases is the borrower.  Since the borrower cannot assert the defense of usury, the accommodation party cannot".) (internal quotations and citations omitted).